■ In the Matter of JOHN KARANJA, Doing Business as JOHN KARANJA PHARMACY and Another, Respondent, v CESAR A. PERALES, as Commissioner of Social Services of the State of New York, Appellant.—Judgment, denominated an order, of the Supreme Court, New York County (Shirley Fingerhood, J.), entered January 31, 1989, which annulled appellant's determination denying petitioner's application for reenrollment in the New York State Medicaid program, is unanimously reversed, on the law, and the petition dismissed, without costs.

Petitioner, the owner of a pharmacy, who was denied reenrollment as a provider in respondent's Medicaid program, brings this CPLR article 78 proceeding challenging that determination as arbitrary and capricious and as violative of lawful procedure in that it was made without a hearing. We are committed to the view that a Medicaid provider denied reenrollment under 18 NYCRR part 504 has neither a constitutional nor statutory right to a hearing *(Matter of Barata v Perales,* 157 AD2d 623; *Winyard v Perales,* 161 AD2d 317; *accord, Matter of G&S Pharmacy v Perales,* 151 AD2d 668 [2d Dept], *lv denied* 74 NY2d 612; *Matter of Bezar v New York State Dept. of Social Servs.,* 151 AD2d 44 [3d Dept]; *see also, Matter of Bora v New York State Dept. of Social Servs.,* 152 AD2d 10 [3d Dept]). Such a provider is, however, entitled to a statement of the reasons why reenrollment is denied (18 NYCRR 504.4 [e] [2]; 504.5 [b]), and to article 78 relief if those reasons are arbitrary and capricious.

The reasons given by respondent to petitioner for denying him reenrollment were three violations of proper pharmaceutical practice it had observed when it conducted an on-site inspection of his pharmacy after receiving his application for reenrollment: no pharmacist on the premises for a period of three hours when the pharmacy was open for business, in violation of Education Law § 6808 (2) (e); prescriptions being filled that did not have imprinted on them the names of the prescribers who had signed them, in violation of Education Law § 6810 (8); and two outdated drugs in the pharmacy's refrigerator that were not segregated or otherwise idenitfied, in violation of 8 NYCRR 29.7 (a) (17). Notified by respondent that he had the "right to appeal" the decision denying him reenrollment by presenting "written arguments and documentation concerning any mistake of fact upon which the determination may have been made", petitioner did so through an attorney who presented himself as having some kind of attorney-client relationship with every pharmacy in the State.

The attorney's letter to respondent argued that the violations cited were "minor and technical", advised that they had been corrected, invited respondent to reinspect petitioner's pharmacy, and urged respondent to reconsider its decision. Concerning the absence of a licensed pharmacist, the attorney said that petitioner had been under the impression that if prescriptions were not actually being filled, a pharmacist did not have to be on the premises "simply to accept [them] from customers", but, now that petitioner knew otherwise, he would make sure there was. Concerning the imprint violation,

the attorney said that he, the attorney, had been under the impression, based on conversations he had with respondent's own officials, that it was respondent's policy not to enforce the "letter of the law" if the prescriptions came from hospitals and "legitimate medical centers who do not list all physician names." Here, the attorney pointed out, since the pharmacy is located in the very same building as the medical center from which the objectionable prescriptions came, and since there were only two or three physicians in this medical center writing prescriptions, "it was obvious" that petitioner knew the prescribing physicians personally and that the reliability and validity of the prescriptions were assured. Finally, with respect to the segregation requirement, the attorney said that the two outdated items found in petitioner's refrigerator, if not properly segregated, were in fact being held for return to the manufacturer; that it is impossible for a pharmacy with thousands of items in inventory at any given time to be in 100% compliance with this requirement 100% of the time; and that petitioner was now double-checking his inventory periodically to better assure that no outdated drugs are on his premises. Petitioner's appeal was to no avail, as the attorney's submission did not demonstrate to respondent that its determination was based on any "mistakes of fact".

In the article 78 proceeding, respondent's position was that in passing upon applications for reenrollment, its regulations require it to consider, among other things, factors "having a direct bearing on the applicant's ability to provide high-quality medical care, services or supplies to recipients of medical assistance benefits" (18 NYCRR 504.5 [a] [13]), which the violations it had observed at petitioner's pharmacy surely were. Petitioner took issue, contending that he is a "quality provider", and that the violations cited, being "minor and technical" and readily correctible, do not show otherwise. In this regard, he had the support of a pharmacist formerly in charge of the Blue Cross Prescription Drug Program in New York State. His affidavit stated that "[t]he type of minor or technical violations indicated [here] would never result in the termination of a pharmacy from our panel in Blue Cross"; that at any given time "[v]irtually any pharmacy in the country when audited and/or inspected is likely to have similar minor violations"; that the "proper forum" for handling such minor matters is the New York State Board of Pharmacy; that if petitioner is to be branded less than a high-quality provider because of these violations, so too should every pharmacy in New York State; and that "without a

question of a doubt", minor violations such as these "absolutely exist in every pharmacy bar none".

The record contains no direct response by respondent to this affidavit, but, on the appeal, it contends that the violations observed were "serious" threats to the health of petitioner's clients. As for the requirement that a pharmacist be on the premises at all times, this is necessary because there may be a need to verify information with the client before filling a prescription, or to accompany the dispensing of a medicine with additional advice or warnings about its use. The imprint requirement, violation of which is also a class A misdemeanor under Education Law § 6811, protects against overprescription of controlled substances and facilitates identification and consultation with the prescribing physician in the event other physicians are called upon to furnish medical services in an emergency. Finally, segregation of outdated drugs reduces the chance that drugs that have lost their potency or even gone bad will be accidentally dispensed. Also on the appeal, respondent for the first time offers something of an explanation as to why the attorney's letter did not persuade it to change its mind—three serious violations such as these were "substantial evidence that respondent [petitioner] was, in the normal course of his business, not providing high quality medical care, services and supplies", and, while each might be susceptible to quick correction, taken together they left respondent with "no assurance" that petitioner "would not lapse into substandard professional conduct again, as soon as the reenrollment process was over."

Respondent's determination to deny petitioner reenrollment was purportedly based on facts, namely, the three violations, said to have a direct bearing on his ability to provide high-quality services and supplies. Petitioner admits these facts, but disputes that they have such a bearing. Thus, it is not the facts found by respondent that petitioner would have the court review, but the conclusion reached on the basis of those facts that petitioner's ability to provide high-quality services and supplies is doubtful. In the clearest sense of the phrase, petitioner is asking the court to substitute its judgment, as it might be influenced by his expert from Blue Cross, for that of respondent on the question of whether the departures from proper pharmaceutical practice he admits to were such as to bring into question his ability to provide high-quality services and supplies. By statute, that is a judgment to be made by respondent in the exercise of its expert discretion (Social Services Law § 364 [1] [d]; *see, Matter of Bezar v New York*

*State Dept. of Social Servs.,* 151 AD2d, *supra,* at 49 ["close analysis of the regulatory provisions regarding [respondent's] acceptance or rejection of an application to enroll or reenroll reveals that the agency has a wide, virtually unlimited range of discretion, under guidelines permitting the sole reasons for rejection to be based on policy or subjective factors not susceptible to judicial review"]). The facts being admitted, it is for respondent, not the court, to bring to bear the judgment necessary to draw the conclusions called for by statute. Concur—Sullivan, J. P., Ross, Kassal, Ellerin and Wallach, JJ. *[See,* 142 Misc 2d 109.]