**701 PHARMACY CORP., Willen Pharmacy, Inc., Magnam Pharmacy, Inc., Family Pharmacy, Inc., 1491 DeKalb Pharmacy, Inc., 96 Cent Goods and Drugs, Inc., Lasid Sales, Inc., Isham Broadway Pharmacy, Inc., MRB Pharmacy, Inc., Sultan Pharmacy, Inc., Lawrence Drugs, Inc., 67 East Burnside Pharmacy, Riteway Drugs, Inc., Asim Drugs, Inc., Plaintiffs–Appellees,**

v.

**Cesar A. PERALES, Commissioner of the New York State Department of Social Services, Defendant–Appellant.**

**Nos. 775, 776, 777, 778, 779, 780, 781, 782, Dockets 90–7648, 90–7650, 90–7656, 90–7658, 90–7808, 90–7830, 90–7842, 90–7844.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 30, 1991.

Decided April 5, 1991.

Lawrence S. Kahn, Deputy Sol. Gen. (Robert J. Schack, Andrea M.A. Osborne, Asst. Attys. Gen., Robert Abrams, Atty. Gen. of the State of New York), for defendant-appellant.

Jerome I. Sager, New York City (Laurie Lombardo, Lee–Lee Chang, Wise Lerman & Katz, P.C., New York City, of counsel), for plaintiffs-appellees Isham Broadway Pharmacy, Inc., 67 East Burnside Pharmacy, Riteway Drugs, Inc., and Asim Drugs, Inc.

Robert Purzak, Garden City, N.Y. (Jacobson & Goldberg, Garden City, N.Y., of counsel), for plaintiffs-appellees 701 Pharmacy Corp., Willen Pharmacy, Inc., Magnam Pharmacy, Inc., Family Pharmacy, Inc., 1491 DeKalb Pharmacy, Inc., 96 Cent Goods and Drugs, Inc., Lasid Sales, Inc., MRB Pharmacy, Inc., Sultan Pharmacy, Inc., and Lawrence Drugs, Inc.

Before KEARSE, PRATT and McLAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge:

Effective January 5, 1987, the New York State Department of Social Services (the "Department") promulgated new regulations permitting it to terminate, without cause, the participation of a provider of benefits under the State Medicaid program. *See* 18 N.Y.C.R.R. § 504.7(a). Until 1987, the Department terminated providers only for cause. *See* 18 N.Y.C.R.R. Part 515. Because termination for cause involves allegations of fraud or abuse, *see id.*, the Department affords a hearing to providers threatened with a Part 515 termination. *See* 18 N.Y.C.R.R. § 504.7(b). Providers terminated without cause under § 504.7(a), however, are not given a hearing.

We have held today in *Kelly Kare, Ltd. v. O'Rourke*, 930 F.2d 170 (2d Cir.1991), that because participation as a provider in the Medicaid program is not a protected property interest and because termination without cause does not implicate a liberty interest, the Department's failure to provide a hearing under § 504.7(a) does not offend the due process clause of the fourteenth amendment. We are now asked to determine whether the Department's practice of affording a hearing when it terminates a provider for cause (pursuant to § 504.7(b)), but not affording a hearing before it terminates a provider without cause (pursuant to § 504.7(a)), violates the equal protection clause of the fourteenth amendment. We conclude that it does not and reverse the judgment of the district court.

## BACKGROUND

Plaintiffs-appellees are pharmacies licensed by the State of New York and enrolled in New York's Medicaid program. Between December 1989 and May 1990, each pharmacy was subjected to an onsite inspection by the Department. The inspectors concluded that certain conditions in the pharmacies violated Department regulations concerning, *inter alia*, cleanliness, accessibility to the handicapped, and the handling of and accounting for controlled substances.

A short time later, each pharmacy was notified that the Department was terminating the pharmacy's participation in the Medicaid program "without cause" pursuant to § 504.7(a). The notices were accompanied by a "Summary of Factors," listing the Department's reasons for termination. The "Summary of Factors" enumerated the violations found during the Department's earlier inspection. Termination was effective thirty days from the date of the termination letter.

The pharmacies commenced separate actions alleging violations of 42 U.S.C. § 1983, and sought orders enjoining the Department from terminating their participation in the Medicaid program until it provided them with pre-termination hearings. Following hearings, which were consolidated with the merits of the actions pursuant to Fed.R.Civ.P. 65(a)(2), the district court (I. Leo Glasser, *District Judge*) held that, although the absence of a pre-termination hearing did not violate the pharmacies' due process rights, it did run afoul of the equal protection clause of the fourteenth amendment. The district court permanently enjoined the Department from terminating the pharmacies' participation as Medicaid providers under § 504.7(a) without first providing a hearing. This appeal followed.

## DISCUSSION

## I. THE REGULATORY SCHEME

Medicaid is a joint federal and state program designed to provide medical care to the indigent. *See* 42 U.S.C. § 1396 *et seq.* Under New York's Medicaid program, the Department is the "single state agency", 42 U.S.C. § 1396a(a)(5), empowered to adopt regulations governing the program. *See* N.Y.Soc.Serv.L. §§ 363–a(1) & (2). The Department's regulations are promulgated in 18 N.Y.C.R.R. Part 500.

Under the state regulations, private and public medical personnel whose applications for enrollment are accepted by the Department agree to abide by all Department regulations. *See* 18 N.Y.C.R.R. § 504.3. New York Medicaid providers are not issued a license, certificate or permit

that confers any right to continued participation in the Medicaid program. Indeed, New York courts have characterized the relationship between the State and the provider as "contractual in nature." *Ray Pharmacy, Inc. v. Perales*, App.Div., 564 N.Y.S.2d 767 (1st Dep't 1991); *Bora v. New York State Department of Social Services*, 152 A.D.2d 10, 13, 547 N.Y.S.2d 956, 958 (3rd Dep't 1989).

Under the 1987 amendments to the regulations, the Department may terminate a provider's participation in the Medicaid program in either of two ways. Under § 504.7(a), "[a] provider's participation in the program may be terminated by either the provider or the department upon 30 days' written notice to the other without cause." 18 N.Y.C.R.R. § 504.7(a). This "without cause" termination does not afford the provider with a pre-termination hearing unless the Department also demands restitution or repayment of an overpayment. *See* 18 N.Y.C.R.R. §§ 518.5(a), 519.4(a)(2).

The other way to terminate a provider is pursuant to § 504.7(b), "if the department finds that the provider has engaged in an unacceptable practice as set forth in Part 515 of this Title." 18 N.Y.C.R.R. § 504.7(b). "An *unacceptable practice* is conduct which constitutes fraud or abuse" and includes specific practices such as submitting false claims, making false statements, conversion, soliciting or receiving bribes or kickbacks, unacceptable recordkeeping, employing a sanctioned person, receiving payments for services in addition to payment under the Medicaid program, deceiving clients or unlawful discrimination. 18 N.Y.C.R.R. § 515.2(b) (emphasis in original). With certain exceptions not relevant here, § 504.7(b) expressly affords a hearing to a provider terminated for engaging in unacceptable practices. *See* 18 N.Y.C.R.R. § 504.7(b). Termination under § 504.7(b) may carry in its wake censure or exclusion from the Medicaid program for a reasonable time, *see* 18 N.Y.C.R.R. § 515.3(a), and, pursuant to federal regulations, formal notice must be given to the

public and the government of the exclusion. *See* 42 C.F.R. § 1002.206(c).[1]

Judicial review of the Department's termination decision pursuant to either provision is available under Article 78 of the New York Civil Practice Law & Rules. N.Y.C.P.L.R. Art. 7801 *et seq.; see, e.g., Ray Pharmacy.* Such a review, of course, is common. The practice, therefore, is for the Department to include a Summary of Factors with its termination letter. Even when the termination is without cause, the Department will be obligated to state its reasons for the termination to enable the Article 78 court to determine whether the decision was made in bad faith and therefore arbitrary and capricious. *See* N.Y.C. P.L.R. § 7803(3); *Karanja v. Perales*, App. Div., 559 N.Y.S.2d 521, 522 (1st Dep't), *appeal denied*, 76 N.Y.2d 715, 565 N.Y. S.2d 766, 566 N.E.2d 1171 (1990). Commendably, the Department has chosen to disclose its reasons earlier in anticipation of that challenge.

## II. THE EQUAL PROTECTION CHALLENGE

The pharmacies challenge § 504.7(a) on the ground that the Department's failure to afford a hearing for providers terminated thereunder, while giving a hearing to providers terminated under § 504.7(b), violates the equal protection clause of the fourteenth amendment. The argument is that if those terminated under (b) get a hearing, so too must those terminated under (a).

■ Initially, we note that our review of this equal protection challenge is limited to the rational basis test. "Unless laws 'create suspect classifications or impinge upon constitutionally protected rights', it need only be shown that they bear 'some ration-

al relationship to a legitimate state purpose.'" *City of Dallas v. Stanglin*, 490 U.S. 19, 23, 109 S.Ct. 1591, 1594, 104 L.Ed.2d 18 (1989) (quoting *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 40, 93 S.Ct. 1278, 1300, 36 L.Ed.2d 16 (1973)); *Fetterusso v. New York*, 898 F.2d 322, 325 (2d Cir.1990). Under the rational basis test, the regulatory scheme of New York's Medicaid program is "presumed to be valid," *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985); and the distinction it draws between terminations under § 504.7(a) and § 504.7(b) does not contravene the equal protection clause "simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.'" *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970) (quoting *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1911)). To sustain their constitutional attack, the pharmacies must demonstrate that the Department's classifications are not rationally related to any legitimate state objective. *See Western & Southern Life Ins. Co. v. State Board of Equalization*, 451 U.S. 648, 668, 101 S.Ct. 2070, 2083, 68 L.Ed.2d 514 (1981); *Schweiker v. Wilson*, 450 U.S. 221, 230, 101 S.Ct. 1074, 1080–81, 67 L.Ed.2d 186 (1981).

■ The Department advances several bases upon which to justify the regulatory distinction challenged here. The first justification for the classification is the presence or absence of a due process interest. The Department claims that it affords a hearing only under § 504.7(b) because such terminations may implicate an interest protected by the due process clause. Although we conclude today in *Kelly Kare*,

---

1. Section 1002.206 provides:
   After the review, if the agency makes a final decision to exclude—

   .    .    .    .    .

   (c) The agency must also give notice of the exclusion and the effective date to the [Office of Inspector General within the Department of Health and Human Services], [Health Care Financing Administration], the public, and, as appropriate, to—

   (1) Recipients;
   (2) [Utilization and Quality Control Peer Review Organizations];
   (3) Providers and organizations;
   (4) Medical societies and other professional organizations;
   (5) State licensing boards and affected State and local agencies and organizations; and
   (6) Medicare carriers and intermediaries.
   42 C.F.R. § 1002.206(c) (1989).

*Ltd. v. O'Rourke,* 930 F.2d at 176 (2d Cir. 1991), that providers have no property interest in continued participation in the Medicaid program, to determine the validity of the Department's rationale, we necessarily would have to determine whether termination "for cause" under § 504.7(b) implicates a liberty interest protected by the due process clause, a question we expressly left unanswered in *Kelly Kare. See id.* at 177 n. 4. We decline to reach this intriguing constitutional issue to determine the validity of the regulatory scheme under the equal protection clause because the Department has proffered other rationales that are sufficient to defeat the pharmacies' challenge.

The Department's regulations reflect a sensitivity to the practical implications of a termination for "unacceptable practices" under § 504.7(b). A Medicaid provider so terminated faces censure or exclusion from the program for a definite period of time, *see* 18 N.Y.C.R.R. § 515.3(a); and it cannot reapply for participation until the expiration of the period of exclusion. *See id.* § 515.9(a). Under federal law the Department must notify the government and the public of its decision to terminate a provider for fraud or abuse pursuant to § 504.7(b), *see* 42 C.F.R. § 1002.206(c), and such a terminated provider may also face exclusion from any part of the Medicare program. *See* 42 U.S.C. § 1320a–7(b)(5)(B). In addition, a provider terminated under § 504.7(b) is excluded from any involvement relating to providing medical care to Medicaid recipients. *See* 18 N.Y.C.R.R. § 515.5(c). Thus, the Department will not pay pharmacies for prescriptions written by a physician terminated under § 504.7(b), *see id.* § 515.5(b), and the Department will not pay providers who hire a provider excluded under § 504.7(b). *See id.* § 515.5(b). Indeed, any provider who hires a provider terminated under § 504.7(b) and submits a claim to the Department for the excluded provider's services, is itself subject to exclusion under § 504.7(b). *See id.* § 515.2(b)(7). None of these sanctions applies to a § 504.7(a) termination, and a provider terminated thereunder may reapply

for participation at any time. *See* 18 N.Y. C.R.R. § 504.5(d).

The district court accepted the pharmacies' argument that these are distinctions without a difference. The pharmacies contend that, regardless of whether it is an (a) or (b) termination, the government and the public are necessarily "notified" of the termination because they are no longer able to provide services under the Medicaid program. They also complain that the ability to reapply at any time after termination is illusory because the Department would not terminate a provider one day and accept an application for reenrollment from the same provider on the next day. Although these arguments have a visceral appeal, the fact remains that providers terminated under § 504.7(b) are found to have engaged in fraudulent or abusive practices and are subject to grave collateral consequences, not the least of which is their complete exclusion from any activity relating to the Medicaid program for a definite period of time. The regulatory scheme of New York's Medicaid program in providing a hearing under § 504.7(b) is tailored to prevent the unwarranted imposition of these consequences, which do not ensue when a provider is terminated without cause.

There is nothing anomalous about treating rule violations in a manner proportionate to the violation and providing enhanced procedural protections to those charged with more serious infractions. When the Department determines that a Medicaid provider has violated its regulations in a manner rising to a level of fraud or abuse, it seeks to terminate that provider pursuant to § 504.7(b) and provides a hearing that is commensurate with the nature and consequences of the charge. When the Department seeks to terminate a provider for conduct that does not rise to a level of fraud or abuse—or for no reason at all—it terminates pursuant to § 504.7(a). As noted above, conduct resulting in a § 504.7(a) termination might typically include the failure to maintain sanitary conditions, provide access to the handicapped or properly han-

dle and account for controlled substances.[2]

The pharmacies respond that (1) these (a) "factors" could also constitute "unacceptable practices" under § 515.2(b); and (2) an "unacceptable practice" under (b) does not necessarily include fraud or abuse. No evidence was adduced, however, to support either argument. On its face, the regulation defines an unacceptable practice as "conduct which constitutes fraud or abuse and includes" the specific practices that the Department considers egregious breaches of the Medicaid program's standards. 18 N.Y.C.R.R. § 515.2(b). The pharmacies offered no evidence suggesting that providers have been terminated under § 504.7(b) for conduct that did not meet the definition's requirement of fraud or abuse. Nor is there any support in the record for the pharmacies' allegations that the conduct leading to their

termination constituted unacceptable practices. No evidence was offered to demonstrate that the same "factors" supporting the pharmacies' termination under § 504.7(a) had constituted "unacceptable practices" supporting another provider's termination under § 504.7(b). According to the plain meaning of the regulations and the Department's unrebutted evidence, a provider who gets terminated under § 504.7(b) must have engaged in conduct that is egregious; and he is materially different from a provider terminated "without cause" under § 504.7(a). In the absence of proof to the contrary, there is no basis to conclude that the regulations or the enforcement thereof operate in an irrational fashion.

Moreover, we are not satisfied that the equal protection clause would be compro-

2. The specific conduct alleged in the Summary of Factors follows: *701 Pharmacy Corp.:* inclusion of outdated drugs as part of its regular dispensing stock; failure to report a flood; unsanitary conditions; and improper recordkeeping. *Willen Pharmacy, Inc.:* unsanitary conditions; prescription log lacked name of prescribers and initials of dispenser on each line; pharmacy sign had same telephone number as an adjacent medical center and had name of doctor in violation of New York Education law; unlocked door leading directly from pharmacy to medical center. *Magnum Pharmacy, Inc.:* unlicensed individual creating prescription label; generic prescriptions lacked name of manufacturer or distributor; unsanitary conditions; lacked small graduates making it impossible to dispense reconstituted drugs; unlocked door leading to adjacent medical center. *Family Pharmacy, Inc.:* pharmacist observed running tablets and capsules through his hands into a counting machine; containers of repacked drugs contained no labels; no documentation of generic substitution; failure to initial prescription forms; adulteration and misbranding of drugs. *1491 DeKalb Pharmacy, Inc.:* violation of minimum 300 square foot requirement; generic prescriptions lacked name of manufacturer or distributor; no lot numbers on prescriptions; pharmacy office inaccessible to the handicapped; direct connection to adjacent medical center. *96 Cent Goods and Drugs, Inc.:* filling of more than one prescription from a physician that would pose a health threat to the patient; Drug Enforcement Administration inventory not available; invoices for controlled drug purchases not available; lacked current Drug Information Book and Pharmacy Laws and Regulations Book. *Lasid Sales, Inc.:* repacked drugs without making entry into repacking logs; man-

ufacturer's lot numbers not used; majority of certain drugs prescribed by only two physicians; unsanitary conditions; lacked certain graduates; prescription drugs stored in non-registered area together with expired drugs; failure to initial dispensed prescriptions. *Isham Broadway Pharmacy, Inc.:* possession of physician samples; repackaging in manufacturer's containers bore incorrect statements of quantity; repackaging in prescription vials usually did not bear statements of quantity. *MRB Pharmacy, Inc.:* outdated drugs in active dispensing stock; misbranded drugs; improper labelling; drugs repackaged without entries in repackaging log; unlicensed technicians dispensing prescriptions. *Sultan Pharmacy, Inc.:* routinely filling prescriptions for same patients prescribed by same physician; lacked certain graduates; failure to use manufacturer's lot numbers; unsanitary conditions. *Lawrence Drugs, Inc.:* dispensing unsigned prescriptions; dispensing prescriptions without proper indication of physician's name; dispensing drugs in excess of prescribed amounts; filling prescriptions for Medicaid beneficiaries from physicians whose prescriptions were valid only for Medicare beneficiaries. *67 East Burnside Pharmacy, Inc.:* expired drugs included as part of active dispensing stock; failure to document generic substitution. *Riteway Drugs, Inc.:* improper recordkeeping; possession and apparent sale of drug samples; failure to sign prescription forms; filling prescriptions by an unlicensed person. *Asim Drugs, Inc.:* failure of pharmacist to review computer prescription data typed by unlicensed person; prescriptions did not bear prescribers printed or imprinted name; prescriptions did not bear profession of prescriber; prescription log did not bear initials or signature of dispensing pharmacist.

mised even if occasional inequity resulted when the Department terminated providers under § 504.7(a) without cause, when the provider's conduct amounted to fraud or abuse and the Department might have proceeded under § 504.7(b).

The Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted. Thus, we will not overturn such a statute unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational.

*Vance v. Bradley,* 440 U.S. 93, 97, 99 S.Ct. 939, 942–43, 59 L.Ed.2d 171 (1979) (footnote omitted); *see Dandridge v. Williams,* 397 U.S. at 485, 90 S.Ct. at 1161; *McGowan v. Maryland,* 366 U.S. 420, 425–26, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961); *Greene v. Town of Blooming Grove,* 879 F.2d 1061, 1064 (2d Cir.1989).

■ Changing the focus slightly, the pharmacies suggest that the arbitrary nature of the *termination* regulations may be inferred by comparing the Department's *enrollment* regulations. Part 504 requires providers to submit applications for enrollment in the Medicaid program. *See* 18 N.Y.C.R.R. § 504.10(a). Section 504.10(a) applies to both prospective providers and providers enrolled as of January 5, 1987. Enrolled providers are required to file an application for reenrollment within sixty days following receipt of a notice from the Department. 18 N.Y.C.R.R. § 504.10(b). An applicant denied enrollment or reenrollment is entitled to file a written request for reconsideration, *see* 18 N.Y.C.R.R. § 504.5(e)(1), and thereafter may seek Article 78 review. *See, e.g., Karanja v. Perales,* App.Div., 559 N.Y.S.2d 521 (1st Dep't), *appeal denied,* 76 N.Y.2d 715, 565 N.Y.S.2d 766, 566 N.E.2d 1171 (1990); *Winyard v. Perales,* 161 A.D.2d 317, 554 N.Y. S.2d 919 (1st Dep't), *appeal dismissed,* 76 N.Y.2d 888, 561 N.Y.S.2d 549, 562 N.E.2d

874 (1990); *Barata v. Perales,* 157 A.D.2d 623, 550 N.Y.S.2d 642 (1st Dep't 1990). Each of the pharmacies here, except appellee Lawrence Drugs, Inc., properly sought and was granted reenrollment. Lawrence Drugs properly applied for and received new-enrollee status in February 1990.

The incongruity of the regulations, the pharmacies suggest, is that the Department affords a departmental review mechanism for applicants denied enrollment who typically have made little or no investment in their businesses, but denies even a written request for reconsideration to well-established providers terminated without cause. Although it is unfortunate that a provider relying on its Medicaid participation may effectively be put out of business if terminated, the department's rationale for refusing a written appeal is legitimate.

The Department does not contend that applicants who are denied either enrollment or reenrollment possess a *right* to a review process. Rather, the regulations reflect a more pragmatic concern. In one year, the Department makes approximately 100 times the number of enrollment decisions as it does decisions to terminate under § 504.7(a), with approximately the same number of employees making enrollment decisions and termination decisions. The written reconsideration procedure is thus aimed at minimizing the greater risk of error associated with an enrollment determination.

This is not to say, of course, that providers terminated under § 504.7(a) have no legal recourse. As noted above, a provider's termination is subject to judicial review, albeit limited to the issue of malicious intent, under Article 78 of the C.P.L.R. Indeed, the pharmacies do not complain that Article 78 review is insufficient. They seek only to enjoy the administrative review mechanism afforded to providers terminated for fraud or abuse. We conclude, however, that the Department's regulations satisfy the rational basis test inasmuch as they represent a measured response to the State's obligation to provide quality health care to the indigent and con-

serve public funds, while simultaneously affording enhanced procedural protection only to providers charged with fraud and abuse. The pharmacies' equal protection challenge, accordingly, must fail.

## III. THE DUE PROCESS CHALLENGE

The pharmacies' remaining attack on the Department's regulations is a challenge under the due process clause of the fourteenth amendment. The pharmacies claim that continued participation in the Medicaid program is a property interest, of which they cannot be deprived absent a pre-termination hearing. We reject this argument. *See Kelly Kare*, 930 F.2d at 176, decided today.

## CONCLUSION

The judgments of the district court are reversed.