**FSK DRUG CORP., Plaintiff–Appellant,**

v.

**Cesar A. PERALES, Commissioner of the New York Department of Social Services, Defendant–Appellee.**

**No. 991, Docket 91–9174.**

United States Court of Appeals, Second Circuit.

Argued Feb. 28, 1992.

Decided March 19, 1992.

Jerome I. Sager, New York City (Laurie Lombardo, Wise Lerman & Katz, on the brief), for plaintiff-appellant.

Gerald Slotnik, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen., on the brief), for defendant-appellee.

Before LUMBARD, NEWMAN, and WINTER, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This appeal raises equal protection challenges to the re-enrollment provisions of New York State's Medicaid regulations. Finding the challenges foreclosed by the reasoning in our recent decision in *701 Pharmacy Corp. v. Perales*, 930 F.2d 163 (2d Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 67, 116 L.Ed.2d 42 (1991), we affirm the dismissal of the action on motion for summary judgment.

FSK Drug Corporation (the "Company") appeals from the November 4, 1991, judgment of the District Court for the Eastern District of New York (Weinstein, Judge) granting the defendant's motion for summary judgment and dismissing its complaint alleging that the New York State Department of Social Services' (the "Department") denial of its application for re-enrollment as a Medicaid provider pursuant to 18 N.Y.Comp.Codes R. & Regs., tit. 18, §§ 504.5 and 504.10(b) (1991) ("NYCCRR") violated the Due Process and Equal Protection Clauses of the United States Constitution. The action sought to permanently enjoin the Department and its Commissioner, Cesar A. Perales, from denying a Medicaid provider's enrollment or re-enrollment application pursuant to 18 NYCCRR § 504.5 without providing a prior hearing. Before the District Court, the Company contended that denial of re-enrollment without a prior hearing, pursuant to 18 NYCCRR § 504.5, violated the Equal Protection Clause because such a hearing is required for terminating a provider for substantially similar conduct, pursuant to 18 NYCCRR § 504.7(b) or 18 NYCCRR Part 515. On appeal, the Company raises three issues: (1) the Department enforces

18 NYCCRR § 504.5 in violation of the Equal Protection Clause; (2) the Department selectively enforces the re-enrollment requirement of 18 NYCCRR § 504.10(b); and (3) the Department's determination denying the Company's Medicaid re-enrollment application was arbitrary and capricious.

### Facts

FSK is a registered pharmacy in Brooklyn, New York, and has been enrolled as a Medicaid provider for over twenty years. Pursuant to 18 NYCCRR § 504.10(b), effective January 5, 1987, the Company was required to submit an application to re-enroll as a provider. Upon timely submission of the application, the Department conducted an on-site inspection and reviewed the Company's billing records. By letter dated August 3, 1990, the Department informed the Company that its re-enrollment application had been rejected, and therefore its status as a Medicaid provider would terminate within 60 days. The letter provided a "summary of factors" supporting the Department's decision. The Department's Appeal Committee reviewed the Company's written appeal, and recommended denial of the re-enrollment application. By letter dated November 16, 1990, the Department informed the Company of the final decision to deny enrollment.

Pursuant to 42 U.S.C. § 1983 (1988), the Company thereafter brought an action in federal district court for declaratory and injunctive relief. The District Court preliminarily enjoined the Department's enforcement of its final determination pending disposition on the merits. On November 4, 1991, the District Court granted the Department's motion for summary judgment. The Court also ordered the Department to permit the Company to submit immediately a new application for re-enrollment, to provide expedited review of the application, to consider the application without prejudice, and to notify the Company by phone if it determines that its application should be granted. Judge Weinstein further ordered that if approved, the Company's re-enrollment shall be retroactive as of November 4, 1991.

### Discussion

#### A. *Medicaid enrollment and re-enrollment applications*

Part 504 of the Department's regulations, effective January 5, 1987, sets forth the procedures governing applications to enroll or re-enroll as a Medicaid provider and the standards for reviewing such applications. 18 NYCCRR § 504.1. Since that date, all prospective, § 504.10(a), and current, § 504.10(b), providers desiring Medicaid reimbursement have been required to submit an application within sixty days of receiving notice from the Department.

In determining whether to grant such an application, the Department is guided by the standard of "the best interest of the medical assistance program." *Id.* § 504.-4(e)(2). Most of the relevant factors concern the applicant's past or current conduct and competency. *Id.* § 504.5(a)(1)–(13). The regulations also provide a catchall provision that allows the Department to consider "any other factor which may affect the effective and efficient administration of the program, including, but not limited to, the current availability of medical care, services or supplies to recipients (taking into account geographic location and reasonable travel time)." *Id.* § 504.5(a)(14). Thus, in some instances, an enrollment or re-enrollment application may be denied even if the applicant has engaged in no wrongdoing and is otherwise qualified.

If an application is denied, the applicant has 60 days to appeal the denial by filing a written request for reconsideration with the Department. *Id.* § 504.5(e)(1). A timely request stays any action to terminate a provider's current participation in the program. *Id.* The request for reconsideration may include all information which the applicant wishes to have considered, including any documentation or arguments that "controvert the reason for the denial or disclose that the denial was based upon a mistake of fact." *Id.* § 504.5(e)(2). The appeal is reviewed by an appeals committee consisting of three persons from the Department's Division of Administration and

Medical Assistance who did not participate in the initial determination. The panel's recommendation is made to the Deputy Commissioner for Medical Assistance, who renders the Department's final decision within 60 days of receipt of the appeal. *Id.* § 504.5(e)(3). The decision is final for purposes of exhaustion of administrative remedies and for availability of Article 78 review. *Id.* If the application has been denied, the applicant may reapply upon correction of the factors leading to the denial. *Id.* § 504.5(d).

## B. *Equal protection claim*

█ The Company contends that the Department's failure to provide a hearing prior to denying a provider's re-enrollment application under section 504.5 violates the Equal Protection Clause of the United States Constitution. The Department currently affords a hearing prior to terminating a provider for cause pursuant to 18 NYCCRR § 504.7(b). The Company reasons that because the Department has the same objective—preservation of Medicaid's financial and qualitative integrity—when it terminates a provider as when it denies an application for re-enrollment, the Department lacks a rational basis for denying an enrollment or re-enrollment application under section 504.5 without a hearing. *See generally Western & Southern Life Insurance Co. v. State Board of Equalization,* 451 U.S. 648, 668, 101 S.Ct. 2070, 2083, 68 L.Ed.2d 514 (1981) (to sustain an equal protection challenge, plaintiff must demonstrate that classifications are not rationally related to any legitimate state objective). We disagree.

In *701 Pharmacy Corp. v. Perales,* 930 F.2d 163 (2d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 67, 116 L.Ed.2d 42 (1991), this Court upheld, against an equal protection challenge, New York's statutory scheme that affords a hearing prior to the termination of a provider for cause pursuant to section 504.7(b), but not prior to a termination without cause under section 504.7(a). A provider may be terminated for cause under section 504.7(b) only "if the department finds that the provider has engaged in an unacceptable practice as set forth in Part 515 of this Title." 18 NYCCRR § 504.7(b). Termination for engaging in an "unacceptable practice" may result in serious collateral consequences for the terminated provider, such as censure or exclusion from the Medicaid program for a reasonable time. *See id.* § 515.3(a), (b). Pursuant to federal regulations, formal notice of the exclusion must be given to the public and the federal government. *See* 42 C.F.R. § 1002.206(c). In upholding the availability of a hearing prior to a termination for cause, we explained, "The regulatory scheme of New York's Medicaid program in providing a hearing under § 504.7(b) is tailored to prevent the unwarranted imposition of these consequences, which do not ensue when a provider is terminated without cause." *701 Pharmacy,* 930 F.2d at 167.

The reasoning in *701 Pharmacy* is equally applicable to the instant case. Like a termination without cause, the denial of a re-enrollment application does not impose the collateral consequences that result from a termination for cause under section 504.7(b). Faced with this directly analogous situation in *701 Pharmacy,* we explained that "[t]here is nothing anomalous about treating rule violations in a manner proportionate to the violation and providing enhanced procedural protections to those charged with more serious infractions." *Id.* at 167.

*701 Pharmacy* also rejected an argument similar to the Company's alternative contention on this appeal. Because the conduct proscribed under section 504.5's re-enrollment process overlaps Part 515's "unacceptable practices," the Company argues that it is thereby entitled to Part 515's greater procedural protections. Similarly, the pharmacies in *701 Pharmacy* argued that the "factors" relied upon by the Department to terminate without cause could also constitute "unacceptable practices" under section 515.2(b). *Id.* at 168. *701 Pharmacy*'s rejection of this argument applies with equal force in the instant case. *See id.* at 168–69 ("we are not satisfied that the equal protection clause would be compromised even if occasional inequity result-

ed when the Department terminated provider's under § 504.7(a) without cause, when the provider's conduct amounted to fraud or abuse and the Department might have proceeded under § 504.7(b)'').

Contrary to the Company's position, the lack of a hearing requirement prior to the denial of a re-enrollment application does not provide the Department with an end-run around section 504.7(b)'s hearing requirement. After *701 Pharmacy*, the Department has the option to terminate without a hearing so long as it is willing to forgo the imposition of Part 515's collateral consequences. The Department has no need to use the re-enrollment process to issue a *de facto* termination without a hearing when it may terminate without a hearing under section 504.7(a).

### C. *Selective application of the re-enrollment requirement*

The Company further contends that the Department selectively enforces its re-enrollment provision by requiring only large pharmacy and physician providers to re-enroll, pursuant to 18 NYCCRR § 504.10, while excluding hospital pharmacies and drug store chains from the requirement.

Specifically, by letter dated January 4, 1991, a Manhattan Rite Aid Store was denied re-enrollment following an onsite inspection, but was permitted to submit a new application for re-enrollment. After reviewing Rite Aid's written appeal, the Department affirmed its original determination. By letter dated March 29, 1991, the Department agreed to permit Rite Aid to file a new application for reenrollment and indicated that acceptance would be retroactive to April 8, 1991. The Company, unlike Rite Aid, was not permitted to file a new application for reenrollment. Counsel for the Company, Jerome I. Sager, states by sworn affidavit that he has handled other cases in which the Department has informed the providers that they could not submit a new application for re-enrollment for at least two years after their initial application was denied. In two of these cases, Attorney Sager alleges that the Department even refused to provide re-enrollment applications and did so only after the intervention of various legislators.

A claim of selective application of a facially lawful state regulation requires a showing that: (1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person. *Wayte v. United States*, 470 U.S. 598, 608–09, 105 S.Ct. 1524, 1531–32, 84 L.Ed.2d 547 (1985); *LeClair v. Saunders*, 627 F.2d 606, 609–10 (2d Cir.1980), *cert. denied*, 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981). Because the Company does not allege discriminatory treatment based on either an impermissible factor or on its exercise of constitutional rights, we review the record for evidence of a malicious or bad faith intent to injure.

The affidavit of Mary A. Brankman, Coordinator for Enrollment and Collections in the Department's Office of Audit and Control, states that all free standing pharmacies including those that are part of chains are required to reenroll in the Medicaid program. The affidavit states that hospital-based pharmacies are required to re-enroll, as are other categories of providers, including podiatrists, durable medical equipment suppliers, and transportation providers. The Brankman affidavit indicates that in 1990 the Department's Office of Audit and Quality Control received 315 re-enrollment applications for review. The Department has approved 128 re-enrollment applications, denied 39, with 167 still pending. The Department explained that it did not allow the Company to resubmit an application in this case because it has a policy against re-evaluating applications of companies challenging its denial through litigation. This policy is grounded on a legitimate interest in conserving the Department's resources; a provider that ultimately prevails in the judicial forum will be reinstated, rendering administrative consideration unnecessary. Because the

record does not contain evidence of bad faith or a malicious intent, we affirm the District Court's grant of summary judgment in favor of the Department.

D. *Jurisdiction to review the Department's substantive decision*

This Court lacks jurisdiction to hear the Company's claim that the Department's substantive decision was arbitrary and capricious. A federal court's review of state administrative proceedings is limited to whether the state has provided adequate avenues of redress to review and correct arbitrary action. *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 888 (2d Cir.1987). A section 1983 action is not an appropriate vehicle to consider whether a state or local administrative determination was arbitrary or capricious. *Id.* This claim could have been, but was not, raised in a state court proceeding under N.Y.Civ.Prac.L. & R., art. 78, §§ 7801–06 (McKinney 1981). *See 701 Pharmacy Corp. v. Perales*, 930 F.2d at 166 ("Judicial review of the Department's termination decision . . . is available under Article 78 of the New York Civil Practice Law and Rules.").

The judgment of the District Court is affirmed.