Albert S. COHEN, F & R Drugs, Inc., Family Pharmacy, Inc., Lasid Sales, Inc., Abraham Lock, M.D., Louis Timothee, M.D., Paul Citrin, M.D., and William Capote, M.D., Plaintiffs,

v.

Mary Jo BANE, Commissioner of the New York State Department of Social Services, the New York State Department of Social Services, Mark R. Classon, as Commissioner of the Department of Health of the State of New York, the Department of Health of the State of New York, Cesar A. Perales, John Wiley, Norman Righthand, "John" Matz, M.D., the first name being unknown, Andrew Kim, M.D., "John" Honigan, the first name being unknown, Juliet Fisher, R.N., John Articolo, Eileen Duffy, Barbara Ferries, Joan Costantino, John Wrafter, Robert Abrams as Attorney General of the State of New York, James White, Raul Tabora, Kathleen Wipple, Clement Deodati, and Fritz Meyer, Defendants.

No. 92 CV 5562 (SJ).

United States District Court, E.D. New York.

May 20, 1994.

Joseph O. Giaimo, Giaimo & Vreeburg, P.C., Kew Gardens, NY, for plaintiff.

Robert Abrams, Atty. Gen. of the State of New York (Gerald Slotnik, of counsel), New York City, for defendants.

## ORDER

JOHNSON, District Judge:

### INTRODUCTION

Plaintiffs have brought an action for permanent injunction and damages based upon allegations that Defendants deprived Plaintiffs of their civil rights in violation of 42 U.S.C. §§ 1983[1] and 1985[2]. Defendants have moved to dismiss these claims pursuant to Fed.R.Civ.P. 12(b)(1), for lack of subject

---

[1]. Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983 (1981).

[2]. Section 1985(3) provides that "[i]f two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; ...; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators." 42 U.S.C. § 1985 (1981).

matter jurisdiction; Fed.R.Civ.P. 12(b)(2) for improper service; and Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. Defendants have also moved for sanctions to be imposed upon the Plaintiffs pursuant to Rule 11 of the Federal Rules of Civil Procedure. For the reasons stated below, Defendants' motion is granted in its entirety.

## BACKGROUND

When determining the sufficiency of a complaint, a federal court construes the factual allegations of the complaint in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The court may resolve factual issues by reference to evidence outside the pleadings on a motion challenging a court's subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *Antares Aircraft v. Federal Republic of Nigeria*, 948 F.2d 90, 96 (2d Cir.1991). In deciding this motion, the Court has examined the complaint and the exhibits to the motion before this Court.

### A. The Plaintiffs

Plaintiffs include Albert S. Cohen ("Cohen"), a pharmacist; F & R Drugs, Inc. ("F & R"), Family Pharmacy, Inc. ("Family"), and Lasid Sales, Inc. ("Lasid"), pharmacies located in Kings County and Bronx County; and physicians Abraham Lock ("Lock"), Louis Timothee ("Timothee"), Paul Citrin ("Citrin"), and William Capote ("Capote"). Each of the Plaintiffs was enrolled and authorized by the Department of Social Services of New York State ("DSS") to participate as a Medicaid provider. As such, each provider could be reimbursed through Medicaid for services rendered, laboratory tests performed, and pharmaceuticals prescribed. Plaintiffs' participation in the Medicaid program was terminated pursuant to 18 N.Y.C.R.R. § 504.7(a) which permits termination without cause; it is this termination that is the basis of this lawsuit.

In 1988, Governor Mario Cuomo announced that the budget for DSS would be reduced by $800 million over the next fiscal year. This reduction was indeed carried out and was followed by further decreases in funding. Plaintiffs allege that, in order to comply with the budget cuts as directed by the Governor of New York, Defendants conspired to target high-volume Medicaid providers. It is alleged that this conspiracy deprived the Plaintiffs of their civil rights.

Defendants do not deny that Plaintiffs were high-volume Medicaid providers but contend that investigation of high-volume billings is rationally related to the State's interest in allocating scarce monies. Defendants allege that such investigation revealed that the practices of these providers were substandard, thus mandating their termination.

Defendants allege that Plaintiffs Cohen and F & R were terminated because of record discrepancies; aiding and abetting the illegal diversion of drugs; employment of an unlicensed person to fill prescriptions; employment of two unlicensed persons supervised by only one pharmacist; and dirty and unsanitary conditions. In response, Cohen and F & R contend that their equal protection and due process rights have been violated by the conspiracy among the Defendants to strip Plaintiffs and other high-volume providers of their alleged property interests in remaining Medicaid providers.

Defendants allege that Family was terminated for deficient Medicaid practices including mislabeling of drugs, adulteration of drugs, and repacked drugs without labels. Similarly, Defendants contend that Lasid was terminated for deficiencies in its Medicaid practices, including repacking drugs without entering such in the repacking logs and failure to use manufacturer's lot numbers.

In a previous action, Family and Lasid filed suit in this court claiming that they were discharged without cause under 18 N.Y.C.R.R. § 504.7(b) and were entitled to a hearing. Judge Glasser granted the application for a preliminary injunction but the Second Circuit reversed, ruling that the provisions of 18 N.Y.C.R.R. § 504.7(a) which permitted terminations without cause and without a hearing did not violate the equal protection or the due process clauses. *701*

*Pharmacy Corp. v. Perales*, 930 F.2d 163 (2d Cir.), *cert. denied*, — U.S. — , 112 S.Ct. 67, 116 L.Ed.2d 42 (1991).

Plaintiffs then sought relief in the state courts alleging that defendants had terminated plaintiffs arbitrarily, capriciously, and in bad faith. The Appellate Division, Second Department dismissed the claims as time barred by the statute of limitations under N.Y.C.P.L.R. § 217. Now, these same Plaintiffs have come before this Court contending that the Defendants have conspired to deprive them of their equal protection and due process rights in violation of 42 U.S.C. §§ 1983 and 1985.

Plaintiff Citrin was terminated pursuant to 18 N.Y.C.R.R. § 515 on November 11, 1987. He filed suit in state court seeking a preliminary injunction which was denied and the case was subsequently withdrawn by stipulation. On March 23, 1990, Citrin was again terminated and in a subsequent action granted a preliminary injunction by the Supreme Court, Queens County. At an administrative hearing, Citrin and DSS entered into a settlement which Citrin now contends has been ignored by DSS. Citrin claims that his civil rights have been violated by the DSS in ignoring the settlement and terminating his provider status.

Plaintiff Lock's status as a Medicaid provider was terminated on April 15, 1991 pursuant to 18 N.Y.C.R.R. § 515. Lock alleges that his administrative hearing has been delayed by the Defendants' conspiracy and that his termination was wrongful.

Plaintiff Timothee's provider number was terminated pursuant to 18 N.Y.C.R.R. § 515 in May 1992. He alleges that his administrative hearing has been wrongfully delayed by the Defendants' alleged conspiracy.

Plaintiff Capote was excluded from the Medicaid program on April 27, 1992 pursuant to 18 N.Y.C.R.R. § 515 for unacceptable Medicaid practices. He alleges that his termination was wrongful and that his administrative hearing was wrongfully delayed by DSS.

## B. *The Defendants*

DSS is the state agency which administers the Medicaid program in New York state. Cesar Perales ("Perales") was Commissioner of DSS until 1991 when Mary Jo Bane ("Bane") became Commissioner. Mark Chassin ("Chassin")[3] is the Commissioner of the Department of Health of the State of New York. John Wiley ("Wiley") is a DSS administrative law judge. Norman Righthand ("Righthand"), John Matz ("Matz"),[4] Andrew S. Kim ("Kim"), and "John" Honigman ("Honigman")[5] are physicians either currently or formerly employed as peer reviewers by DSS. Juliet Fisher ("Fisher") is a registered nurse who audits physician provider charts for DSS. Fritz Meyer ("Meyer") is an auditor and inspector employed by DSS. Barbara Ferries ("Ferries"), John Wrafter ("Wrafter"), and James White ("White") are administrators of DSS. Raul Tabora ("Tabora") is an attorney formerly employed by DSS. Clement Deodati ("Deodati") is a pharmacist inspector for DSS. The Department of Health of New York ("DOH") assists in the review and approval of Medicaid provider claims. John Articolo ("Articolo") and Ileen Duffy ("Duffy")[6] are employed by DOH and they reviewed Plaintiff Citrin's claim. Jo Ann Costantino ("Costantino") was formerly employed as a DSS manager. Robert Abrams ("Abrams") was the Attorney General of the State of New York whose office represents DSS and DOH

---

**3.** Mark Chassin was named by Plaintiffs as Mark Classon but the Court assumes that Mr. Chassin is the intended defendant.

**4.** The Court, based upon Defendants' representations, assumes that Robert Matz is the correct name of this defendant.

**5.** Defendants allege that Morris Honigman is the correct name of this defendant.

**6.** Ileen Duffy was named by Plaintiffs as Eileen Duffy but the Court assumes that Ileen Duffy is the intended defendant.

in federal and state judicial proceedings.[7] Kathie Whipple ("Whipple") [8] is an Assistant Attorney General and Deputy chief of the Litigation Bureau in the New York City office.

## ANALYSIS

### A. Rule 12(b)(1) Motion

#### 1. Lack of Acknowledgement and Notice

Rule 4(c)(2)(C)(ii) of the Federal Rules of Civil Procedure requires service of a summons and complaint to be accompanied by an acknowledgement and notice. Defendants contend, and Plaintiffs concede, that such acknowledgement was not enclosed; therefore Defendants have moved to dismiss the complaint for defective service.

Plaintiffs have responded that this deficiency is not fatal to the service, citing *Lee v. Carlson*, 645 F.Supp. 1430, 1432–33 (S.D.N.Y. 1986), aff'd, 812 F.2d 712 (2d Cir.1987). Yet *Lee* is distinguishable from the case at bar because there the plaintiff was *pro se* whereas here the Plaintiffs are represented by a duly admitted attorney who is presumed to understand the Federal Rules of Civil Procedure.

Plaintiffs next contend that even if this Court finds the service to have been defective, service should only be quashed and opportunity be given them to amend service. In support of this proposition they cite *Montalbano v. Easco Hand Tools, Inc.*, 766 F.2d 737, 740 (2d Cir.1985) and *Alexander v. Unification Church of America*, 634 F.2d 673, 675–76 (2d Cir.1980) which note that although courts have broad discretion to quash service and to dismiss an action, quashing service and preserving the action is preferred where "there is a reasonable prospect that plaintiff ultimately will be able to serve defendant[s] properly." *Montalbano*, 766 F.2d at 740 (quoting 5 C. Wright 7 A. Miller, *Federal Practice and Procedure* § 1354, at 585 (1969)). It is likely that Plaintiffs would be able to cure the defects in service; however such an opportunity is unavailable as the claims have been dismissed for reasons stated below.

#### 2. Lack of Service

Defendants further allege that some Defendants were never served or service was attempted at the wrong location. According to the Defendants, Honigman and Tabora no longer work for the State of New York and neither has designated DSS as its agent for purposes of service of process. In addition, no papers were received by Perales, Wiley, Wrafter, or White. As with the Acknowledgement and Notice, these defects could be cured; however, such an opportunity is unavailable given the outcome of this motion.

### B. Rule 12(b)(2) Motions

Defendants contend that this Court does not have subject matter jurisdiction over Plaintiffs' claims.

#### 1. Eleventh Amendment Bar

█ The Eleventh Amendment bars suits for damages against states. Absent an explicit abrogation of these immunities by an act of Congress or a particular state statute, claims cannot be lodged against states or their agencies for monetary damages. *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Angrisani v. City of New York*, 639 F.Supp. 1326, 1336–37 (E.D.N.Y. 1986). Claims for prospective injunction of state action, however, can be lodged. *Young*, 209 U.S. 123, 28 S.Ct. 441; *Edelman v. Jordan*, 415 U.S. 651, 666–69, 94 S.Ct. 1347, 1357–58, 39 L.Ed.2d 662 (1974).

█ In the instant action, Plaintiff has brought an action for damages and a prospective injunction against the DOH and DSS of New York State. Any claims against these agencies for money must be dismissed. *Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Similarly, money damage actions brought against state officials in their official capacity must be dismissed as they are, in reality, against the State. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 70, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989); *Ken-*

---

7. Oliver Koppell succeeded Abrams as Attorney General in 1993 but he has not been named in this action.

8. Kathie Whipple was named by Plaintiffs as Kathie Wipple but the Court assumes that Kathie Whipple is the intended defendant.

*tucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Thus, only those claims for prospective injunctive relief against officials in their official capacity may stand.

■ In contrast, money damages claims against the state officials in their individual capacity are allowed to stand. Under *Scheuer v. Rhodes,* 416 U.S. 232, 237–38, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974), the Eleventh Amendment provides no shield of immunity for a state official who deprived another individual of her constitutional rights under color of state law. *Monroe v. Pape,* 365 U.S. 167, 170–71, 81 S.Ct. 473, 475–76, 5 L.Ed.2d 492 (1961).

### 2. State Law Claims

Plaintiffs Citrin, Timothee, Capote, and Lock have asserted claims for termination of their Medicaid provider status under 42 U.S.C. § 1983 which Defendants assert would more properly be brought before a state court in an Article 78 proceeding.[9] Plaintiffs respond that these claims are properly brought into federal court as part of their claims under 42 U.S.C. § 1983 as they allege that their terminations were arbitrary and capricious and did not receive adequate process. To the extent that they seek to merely have the termination reviewed, these claims should be brought before state court in an Article 78 hearing; however, to the extent that a conspiracy is alleged to have been the cause of this deprivation the claims are properly before a federal court. *See Cepeda v. Coughlin,* 785 F.Supp. 385, 387 (S.D.N.Y.1992). Thus, that part of the claims which concerns review of the termination should not be before this Court and only that part which pertains to a deprivation of civil rights can be considered.

### 3. Res Judicata

The doctrine of res judicata holds that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Paganucci v. City of New York,* 785 F.Supp. 467, 475 (S.D.N.Y.1992) (quoting *Saud v. Bank of New York,* 929 F.2d 916, 918 (2d Cir.1991) (quoting *Federated Dept. Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 2427–28, 69 L.Ed.2d 103 (1981))). Thus, plaintiffs must raise all of the claims in a litigation; they simply cannot wait and get a second chance at litigating the same issues under different guises.

### a. Prior Federal Proceedings

■ Plaintiffs Family and Lasid were involved in litigation of this very issue before. *See 701 Pharmacy Corp.,* 930 F.2d 163. Defendants allege that Plaintiffs Lasid and Family are barred entirely from this action in that they failed to raise their conspiracy claims in the prior federal litigation. Plaintiffs contend that the first litigation was a challenge to the State's termination of their Medicaid provider status without a hearing whereas in this litigation they are alleging the existence of a conspiracy to discriminate against high volume Medicaid providers. Plaintiffs assert that the two litigations are entirely different and that the conspiracy could not have been raised at the first litigation.

It is true that Plaintiffs assert that the state trials are evidence of the conspiracy, yet the majority of their claims involve the same Defendants and the same terminations. The Plaintiffs raised claims of equal protection and due process then and are precluded from raising claims based on similar facts now. It would appear that this is merely Plaintiffs' attempt to get a second bite of the apple, which is strictly forbidden.

### b. Prior State Proceedings

■ Plaintiffs Lasid and Family initiated Article 78 proceedings concerning their terminations and these proceedings were delayed for a variety of reasons that ultimately resulted in their dismissal on the basis of time. It is a prerequisite that appeals of state proceedings be appealed to the highest court of the state or as far as such claims are permitted to be appealed. Here, the appellate process has not been exhausted, there-

---

**9.** N.Y.C.P.L.R. art. 78 provides that a termi-  nation decision is reviewable by the judiciary.

fore this Court is precluded from examining those claims. *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *Zimmerman v. Grievance Committee,* 726 F.2d 85, 86 (2d Cir.), *cert. denied,* 467 U.S. 1227, 104 S.Ct. 2681, 81 L.Ed.2d 876 (1984). Although Plaintiffs claim that these state actions involved different allegations because conspiracy was not alleged at the state trials and that, in fact, these very state trials are further evidence of the conspiracy, this Court will not sit as an appellate court to state trial courts. Accordingly, this Court will only consider those trials as possible evidence of the conspiracy claims and will not review the dismissals.

### C. Defendants Abrams and Whipple Have Prosecutorial Immunity

Plaintiffs have brought claims against State Attorney General Abrams and Assistant Attorney General Whipple for their handling of the administrative proceedings. Defendants correctly point out that absolute immunity has been extended to government attorneys handling administrative proceedings and to the initiation of civil litigation. *Butz v. Economou,* 438 U.S. 478, 512–17, 98 S.Ct. 2894, 2913–16, 57 L.Ed.2d 895 (1978); *Barrett v. United States,* 798 F.2d 565, 572 (2d Cir.1986). Plaintiffs assert that Whipple and Abrams cannot benefit from prosecutorial immunity because their authority was discretionary and they exercised their functions on behalf of the conspiracy.

■ Defendant Whipple acted within the scope of her authority in prosecuting these cases and is immunized from this action. Prosecutors must be free from the fear of liability for bringing cases. Defendant Abrams oversaw the Attorney General's office and therefore, Whipple's actions, but no specific allegations that Mr. Abrams was personally involved have been made. *See Cepeda,* 785 F.Supp. at 390–91. The doctrine of respondeat superior does not apply to section 1983 claims and thus, the claims against Defendant Abrams too must fail.[10]

### D. Rule 12(b)(6) Motion

A motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure should be granted only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Green v. Maraio,* 722 F.2d 1013, 1015–16 (2d Cir.1983), *quoting Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). The court must accept as true all material facts well-pleaded in the complaint and must make all reasonable inferences in the light most favorable to the plaintiff. *In re Energy Sys. Equip. Leasing Sec. Litig.,* 642 F.Supp. 718, 723 (E.D.N.Y. 1986).

Plaintiffs here allege that the Defendants conspired to discriminate against high volume Medicaid providers. This allegation presupposes that being a Medicaid provider is a property right protected by the Constitution. This presumption is clearly erroneous.

### 1. Section 1983 Claims

■ In order to prevail on a section 1983 claim, it is necessary to show 1) the deprivation of rights, privileges, or immunities secured by the Constitution or laws of the United States, 2) by a person acting under color of state law. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d 420 (1981), *overturned on other grounds by Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Day v. Morgenthau,* 909 F.2d 75, 77 (2d Cir.1990). The analysis for such claims is well-established:

> We must decide, first, whether [state action] operates to the disadvantage of some suspect class or impinges upon a fundamental right explicitly or implicitly protected by the Constitution, thereby requiring strict judicial scrutiny.... If not, the [legislative] scheme must still be examined to determine whether it rationally furthers some legitimate, articulated state purpose

---

**10.** Similarly, the claims against Defendants Bane, Perales, and Chassin must fail absent allegations of personal involvement. No such allegations were made.

and therefore does not constitute an invidious discrimination. . . .

*Maher v. Roe*, 432 U.S. 464, 97 S.Ct. 2376, 53 L.Ed.2d 484 (1977), *quoting San Antonio School Dist. v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). Thus, for Plaintiffs to succeed, their right to be a Medicaid provider must have protected dimensions which we do not find.

### a. Equal Protection

Defendants have aptly pointed to the Second Circuit opinion in *FSK Drug Corp. v. Perales*, 960 F.2d 6 (2d Cir.1992) wherein a claim of selective enforcement similar to that brought by Plaintiffs was rejected. In *FSK* the plaintiffs alleged that reenrollment provisions of 18 N.Y.C.R.R. § 504.10 were applied only to "large pharmacy and physician providers," and not to hospital pharmacies and state drug chains. The court held that

> A claim of selective application of a facially lawful state regulation requires a showing that: (1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person. *Wayte v. United States*, 470 U.S. 598, 608–09 [105 S.Ct. 1524, 1531–32, 84 L.Ed.2d 547] (1985); *LeClair v. Saunders*, 627 F.2d 606, 609–10 (2d Cir.1980), *cert. denied*, 450 U.S. 959 [101 S.Ct. 1418, 67 L.Ed.2d 383] (1981).

960 F.2d at 10–11. The *FSK* court further held that the plaintiffs' allegations did not "allege discriminatory treatment based on . . . an impermissible factor." *Id.; see also Yapalter v. Bates*, 494 F.Supp. 1349 (1980) (holding that it was permissible to distinguish between hospital and clinic providers of psychiatric services and private psychiatrists).

Here, Plaintiffs only have alleged a conspiracy to deprive based on their status as high-volume Medicaid providers; no allegations of discrimination based on race, national origin, or sex have been made. Plaintiffs claim that non-racial classes are protected under both sections 1983 and 1985 and that Defendants acted arbitrarily and capriciously against the class of high-volume providers. However, "class" does not mean any group with some common feature, but rather a group with an inherent characteristic such as race or sex. The status of Medicaid provider is voluntarily assumed by a person with the State's permission and can be terminated by either party; protected classes under sections 1983 and 1985 cannot easily alter their defining characteristic, nor is it dependent on the State's regulations. Thus, Plaintiffs allegations, even if true, do not constitute discrimination based on an impermissible factor. *See Grossman v. Axelrod*, 646 F.2d 768 (2d Cir.1981) (holding that a Medicaid provider has no property interest in prospective reimbursement payments for purposes of section 1983).

■ Similarly, Plaintiffs have not shown that the status of Medicaid provider is a right secured by a statute or by the Constitution. Section 1983 does not create a substantive right but instead provides the means to protect those rights. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 612, 617–18, 99 S.Ct. 1905, 1913, 1915–16, 60 L.Ed.2d 508 (1979).

■ Plaintiffs have also failed to demonstrate that being a Medicaid provider is a property or liberty interest. Indeed, it is well-established that there is no property interest in continued participation in the Medicaid program. *Kelly Kare, Ltd. v. O'Rourke*, 930 F.2d 170, 175 (2d Cir.1991); *Plaza Health Labs., Inc. v. Perales*, 878 F.2d 577 (2d Cir.1989); *Ray Pharmacy, Inc. v. Perales*, 169 A.D.2d 633, 564 N.Y.S.2d 767, 768 (1st Dept.1991); *Bezar v. New York State Department of Social Services*, 151 A.D.2d 44, 49, 546 N.Y.S.2d 195, 198 (3d Dept.1989).

Finally, Plaintiffs have failed to show that the deprivation of their status as Medicaid providers is not rationally related to a legitimate state interest. Defendants assert that the implementation of Medicaid regulations was merely a proper exercise of their powers and was rationally related to meeting the goal of budget reduction. It is clearly legitimate for a state to regulate its Medicaid

program and to investigate those who might be seeking a larger percentage of reimbursements than others. *See Yapalter,* 494 F.Supp. at 1365–69.

### b. Due Process

■ Due process rights only attach to a property right or a liberty interest. *Kelly Kare, Ltd. v. O'Rourke,* 930 F.2d 170, 174–77 (2d Cir.1991). Plaintiffs did not have a property or interest right in remaining Medicaid providers and thus were not deprived of due process. *Conroy v. Boston Edison Co.,* 758 F.Supp. 54 (D.Mass.1991). Indeed, in the previously litigated case, *701 Pharmacy Corp. v. Perales,* 930 F.2d 163 (2d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 67, 116 L.Ed.2d 42 (1991), the Second Circuit expressly stated that one terminated pursuant to § 504.7(a) need not be provided a hearing.

### 2. Section 1985(3) Claim

■ Section 1985(3) prohibits conspiracies "for the purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." To maintain an action under section 1985(3), a plaintiff must allege, with particularity, overt acts of the defendants, *Powell v. Workmen's Compensation Board,* 327 F.2d 131, 137 (2d Cir.1964), and the allegations must indicate "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971); *see also United Bhd. of Carpenters v. Scott,* 463 U.S. 825, 838–39, 103 S.Ct. 3352, 3360–61, 77 L.Ed.2d 1049 (1983). This requirement has been affirmed by the Supreme Court in several cases and most recently, in *Bray v. Alexandria Women's Health Clinic, et al.,* —— U.S. ——, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993) (holding that opposition to abortion

could not be presumed to reflect sex-based intent). For reasons stated above, we have already held that Plaintiffs were not deprived of a protected right, thus the claim under 42 U.S.C. § 1985 too must fail.

Finally, Plaintiffs allege that Defendants entered into a conspiracy to deprive them of their rights. There must be an actual deprivation before there can be a conspiracy to deprive.[11] *Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977); *Liberty Mut. Ins. Co. v. Those Certain Underwriters at Lloyds,* 650 F.Supp. 1553 (W.D.Pa.1987). Accordingly, the claim of conspiracy is hereby dismissed.

### E. Rule 11 Sanctions

Defendants have moved this Court to impose sanctions on the Plaintiffs pursuant to Rule 11 of the Federal Rules of Civil Procedure. They allege that because the complaint was dismissable on several grounds it is thus frivolous and Plaintiffs' counsel knew or should have known that the claims lacked merit and that the case law was adverse to their claims.

■ Courts recognize the severity of sanctions and are thus careful in imposing such drastic measures. Courts are not to use hindsight in determining the frivolity of claims but rather look to what was known at the time of filing. Yet, in cases where it is clear that a party's attorney should have known that there was absolutely no possibility of prevailing on the merits given the precedent against the claims, sanctions are necessary to deter such counsel from wasting the time and resources of the adversaries as well as of the court. *Harbulak v. County of Suffolk,* 654 F.2d 194, 198 (2d Cir.1981) (holding that attorney fees must be awarded where plaintiff's section 1983 claim was "unreasonable and groundless").

---

**11.** In *Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977) the Second Circuit held that "complaints containing only 'conclusory,' 'vague,' or 'general allegations' of a conspiracy to deprive a person of constitutional rights will be dismissed." Defendants contend that Plaintiffs failed to assert specific allegations of a conspiracy; however, irregardless of the specificity of the Plaintiff's allegations, the claims cannot stand.

In a motion to dismiss, a court must take everything that Plaintiff alleges to be true but even if we credit the facts as true, there simply is no claim under section 1985. Even if the Defendants have conspired to target high volume Medicaid providers in an effort to reduce waste and budgetary demands, such a "class" is simply not protected by section 1985(3).

Here, Plaintiffs' attorney could easily have determined the likely success by examining the case law and considering the fact that many of the claims were barred by res judicata, the Eleventh Amendment, and immunity. Moreover, it would have quickly become apparent that deprivation of Medicaid provider status is not a deprivation remedied by 42 U.S.C. §§ 1983 and 1985. Accordingly, the Court hereby orders Plaintiffs' attorneys to pay the costs of this motion to the Attorney General's office.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is hereby GRANTED in its entirety.

SO ORDERED.