**Harvey L. LATIMER, D.D.S., Huey Newberry, D.D.S., Patricia Newberry, D.D.S., and Darryl Bivens, D.D.S., Plaintiffs,**

v.

**Kenneth S. ROBINSON, M.D., in his official capacity as Commissioner of the Department of Health, and Manny Martins in his official capacity as Deputy Commissioner, Tennessee Tenncare Bureau, Defendants.**

No. 3:03–0670.

United States District Court,
M.D. Tennessee,
Nashville Division.

May 20, 2004.

Michael V. Thompson, Nashville, TN, for plaintiffs.

Sue A. Sheldon, Office of the Attorney General and Reporter, Nashville, TN, for defendants.

### MEMORANDUM

ECHOLS, Chief Judge.

Presently pending before the Court is Defendants' Motion to Dismiss and/or for

Summary Judgment (Docket Entry No. 10), to which Plaintiffs have responded in opposition. For the reasons explained herein, Defendants' Motion to Dismiss shall be GRANTED.

## I. PROCEDURAL HISTORY

On July 28, 2003, Plaintiffs Harvey L. Latimer, D.D.S., Huey Newberry, D.D.S., Patricia W. Newbury, D.D.S., and Darryl Bivens, D.D.S., all general practice dentists licensed by the State of Tennessee, filed their Complaint with this Court alleging claims under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983. Plaintiffs contend that their due process rights were violated when the Bureau of TennCare determined that TennCare, Tennessee's federally funded medical assistance program, would no longer cover orthodontic services provided by general practice dentists except under limited circumstances.[1] Plaintiffs request that this Court grant them declaratory and injunctive relief, reasonable attorney fees and costs, and other relief as this Court deems appropriate. This Court has federal question jurisdiction over the section 1983 claims, see 28 U.S.C. § 1331 (1994). Defendants now move for dismissal of the entire case, or in the alternative, summary judgment.

## II. STANDARD OF REVIEW

Defendants have attached documents outside the pleadings to their Motion to

---

1. In instances where there is a lack of access to orthodontic services because no such specialists reside in the area or participate in the program, generalists with documentation of orthodontic training who have demonstrated proficiency in successfully treating TennCare enrollees diagnosed with severe, handicapping malocclusion will be considered in treating these patients. An exception also permits generalists who received authorization for orthodontic treatment after October 1, 2002 to complete the authorized cases. Finally, another exception allows for deviation from the general rule in cases of "extenuating circumstances," as determined by TennCare.

Dismiss and/or for Summary Judgment. Normally, their attachments would lead the Court to convert Defendants' Motion to Dismiss to a Motion for Summary Judgment. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88 (6th Cir.1997) (generally, "matters outside of the pleadings are not to be considered by a court in ruling on a 12(b)(6) motion to dismiss"). In certain circumstances, however, conversion is improper, despite the presence of extrinsic materials. *See Plassman v. City of Wauseon*, 85 F.3d 629 (6th Cir.1996) (district court's conversion of defendants' motions to dismiss to motions for summary judgment was harmless error).

■ Federal Rule of Civil Procedure 12(b) does not require a court to convert a motion to dismiss, despite a party's submission of extrinsic evidence, where one or more of the following exists: (1) the evidence consists of proceedings of which the court is permitted to take judicial notice, *see Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir.1980); (2) the documents' contents are alleged in the plaintiff's complaint, and their authenticity is unchallenged, *see Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.1994); and (3) the defendant's attachment of extrinsic material to its motion to dismiss does not rebut, challenge, or contradict anything in the plaintiff's complaint, *see Song v. City of Elyria*, 985 F.2d 840, 842 (6th Cir.1993); 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1366 n. 23 (3d ed.1990).

■ Further, submission of extrinsic materials does not require conversion when the documents attached to the defendant's motion to dismiss are referred to in the plaintiff's complaint and are central to plaintiff's claim. *See Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999); *Katt v. Titan Acquisitions, Ltd.*, 133 F.Supp.2d 632, 637 (M.D.Tenn.2000)

(citing *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1555 (6th Cir.1997)).

In this case, it is proper for the Court to consider Defendants' Motion without converting it to one for summary judgment, despite the presence of extrinsic evidence, given that the evidence does not rebut, challenge, or contradict anything in Plaintiffs' Complaint, *see City of Elyria*, 985 F.2d at 842, and that Defendants' attachments are referred to in Plaintiffs' Complaint and central to their claims, *see City of Columbus*, 194 F.3d at 745. The documents attached by Defendants are: (1) a copy of a December 31, 2002, Memorandum by Manny Martins, Deputy Commissioner of the Bureau of Tenncare, describing the Dental Carve–Out (Docket Entry No. 10, Exh. A); and (2) a copy of Executive Order No. 23, which transfers the TennCare program from the Department of Health to the Department of Finance and Administration (*Id.*, Exh. B). The first document is specifically referenced in Paragraphs 10 and 12 of Plaintiffs' Complaint, and the second document relates to Defendants' proposed Order of Substitution, and does not address or contradict any of Plaintiffs' substantive claims. Thus, the Court shall consider the attached documents without converting Defendants' Motion.

It is well settled that a court's task in analyzing the sufficiency of a complaint for the purpose of a motion to dismiss is necessarily narrow and limited. *See Miller v. Currie*, 50 F.3d 373, 377 (6th Cir.1995). The issue is not whether a claim ultimately will prevail, but "whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

Moreover, in reviewing a motion to dismiss for failure to state a claim upon which relief may be granted, a court must review the complaint in the light most favorable to the non-moving party, construing all of its allegations in her favor. *See Skees v. United States,* 107 F.3d 421, 423 (6th Cir. 1997) (citations omitted). A complaint should not be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683 (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *see also G.M. Eng'rs and Assocs. v. West Bloomfield Township,* 922 F.2d 328, 330 (6th Cir.1990) (citation omitted).

## III. FACTS

The relevant facts are as follows: Tennessee participates in the federally funded medical assistance program created by the Medicaid Act, 42 U.S.C. §§ 1396 to 1396v, and Tennessee Code Annotated §§ 71–5–101 to 71–5–2314. Since 1994, the program has operated as a managed care program under the name TennCare, pursuant to a section 1115 demonstration waiver granted by the Secretary of Health and Human Services. The TennCare program assigns each enrollee to a private managed care organization ("MCO") and pays each MCO a fixed monthly amount, referred to as a capitation payment, for each TennCare beneficiary enrolled in the MCO's health plan. Each MCO is required to provide the beneficiary with medically necessary health care services covered by the scope of benefits established by the TennCare waiver and the contract or "risk agreement" between the state and the MCOs.

State medical assistance programs are authorized to establish criteria for providers and restrict covered individuals' choice of providers. The TennCare program is not prevented from "setting reasonable standards related to the qualifications of providers or ... restricting recipients' free choice of providers." 42 C.F.R. §§ 431.51(c)(2), (c)(3). The Bureau of TennCare determined that, effective January 1, 2003, only specialists such as orthodontists or periodontists would be acceptable providers of orthodontic treatments covered by TennCare. (Docket Entry No. 11, Exh. A). In areas where no specialists reside, "generalists with documentation of orthodontic training who have demonstrated proficiency in successfully treating TennCare enrollees diagnosed with severe, handicapping malocclusion will be considered in treating these patients." (*Id.*) Prior to the dental carve-out, general dentists with a particular combination of education and experience were approved by the TennCare program to provide covered orthodontic services. The Bureau of TennCare's justification for the "dental carve-out" was "concerns related to the competence and proficiency of generalists in treating orthodontic cases that represent the most difficult cases." (*Id.*) Currently, the scope of the benefits established in the TennCare waiver includes only specific orthodontic services. For individuals over the age of 21, the orthodontic services covered by TennCare are for individuals who have (1) "a severe, handicapping malocclusion or another congenital or developmental anomaly or injury ..." or (2) following repair of an enrollee's cleft palate. (Docket Entry No. 11, Exh. A).

Plaintiffs are four general practice dentists who have been providers under the TennCare program for several years. Three Plaintiffs maintain practices in Nashville, and one maintains his practice in Hickman County. According to Plain-

tiffs, a large number of their patients are TennCare enrollees, and Plaintiffs derive a substantial part of their income from performing both general dental procedures and orthodontic procedures on TennCare enrollees. Prior to the dental carve-out, Drs. Latimer, Huey Newberry and Patricia Newberry derived thirty percent of their income from TennCare orthodontic patients, and Dr. Bivens derived twenty percent of his income from TennCare orthodontic patients. Now, because Plaintiffs cannot be compensated by TennCare for any orthodontic services they provide to TennCare enrollees, Plaintiffs allege that they have lost a large percentages of their incomes.

According to Plaintiffs, the State of Tennessee affords them the right to provide orthodontic services, and the dental carve-out restricts their ability to exercise their right to provide these services. Because the State afforded Plaintiffs no notice or comment period before institution of the dental carve-out, Plaintiffs believe that the State deprived them of procedural due process in restricting their right to provide orthodontic services to TennCare enrollees without the ability to publicly oppose the dental carve-out.

## IV. ANALYSIS

In their Complaint, Plaintiffs assert a claim under 42 U.S.C. § 1983 based on Defendants' alleged violation of Plaintiffs' procedural and substantive due process rights under the Fourteenth Amendment. (Docket Entry No. 1). Defendants now move for dismissal and/or summary judgment on Plaintiffs' claim of substantive due process. Defendants apparently also believe that Plaintiffs attempted to allege an equal protection claim, and Defendants move for dismissal and/or summary judgment on that purported claim as well.

In Plaintiffs' Response to Defendants' Motion, Plaintiffs clarify that they intend to pursue two claims: violation of their procedural and substantive due process rights. (Docket Entry No. 13 at 3). Accordingly, to the extent that Plaintiffs in their Complaint attempted to allege any claims of denial of equal protection under the law, the Court now understands Plaintiffs to have abandoned those claims.

With respect to their remaining claims, Plaintiffs contend that they should have been afforded notice and a hearing before the dental carve-out was instated, and that Defendants' failure to provide such notice and a hearing deprived Plaintiffs of their constitutionally protected due process rights. In support of their contention, Plaintiffs cite 42 C.F.R. § 431.54(f)(2)(ii), which states that providers are entitled to a hearing if the federally funded program finds that the providers are failing to provide "services of a quality that do not meet professionally recognized standards of health care." Plaintiffs further contend that the United States Supreme Court has held that "[w]hen protected interests are implicated, the right to some kind of prior hearing is paramount." *Board of Regents v. Roth*, 408 U.S. 564, 569–70, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

In response, Defendants aver that Plaintiffs have no constitutionally protected right to be providers of orthodontic services in the TennCare program, and therefore Plaintiffs had no right to notice or a hearing before the adoption of the dental carve-out. Thus, Defendants urge, Plaintiffs have not stated claims upon which relief could be granted. Defendants also point out that the dental carve-out does not prevent Plaintiffs from providing orthodontic services to non-TennCare patients, and does not impact Plaintiffs' ability to obtain reimbursement for other gen-

eral dental services that are covered by TennCare.[2]

■ To prevail on a claim under section 1983, a plaintiff must show (1) that he or she was deprived of a right secured by the federal Constitution or the laws of the United States, and (2) that such deprivation occurred under color of state law. *See Street v. Corrs. Corp. of Am.,* 102 F.3d 810, 814 (6th Cir.1996). Here, Plaintiffs base their Section 1983 claims on violations of the due process protections afforded by the Fourteenth Amendment to the United States Constitution.

### A. *Procedural Due Process Claim*

■ Procedural due process "appl[ies] only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property ... [and] the range of interests protected by procedural due process is not infinite." *Golden State Transit Corp. v. City of Los Angeles,* 493 U.S. 103, 106, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989). To establish a procedural due process claim in a section 1983 action, the plaintiff must establish three elements: (1) he has a life, liberty, or property interest protected by the Due Process Clause; (2) this interest was deprived within the meaning of the Due Process Clause; and (3) the state did not afford him adequate procedures prior to depriving him of his protected interest. *See Franklin v. Aycock,* 795 F.2d 1253, 1261–62 (6th Cir.1986); *Berridge v. Heiser,* 993 F.Supp. 1136, 1141 (S.D.Ohio 1997).

The Court must first determine whether Plaintiffs have a property interest in and a legitimate entitlement to be providers of TennCare orthodontic services. The Supreme Court has stated that to have a property interest in a benefit, "a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Roth,* 408 U.S. at 577, 92 S.Ct. 2701.

"Whether a property interest exists is not determined by reference to the Constitution; rather, property interests are 'created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" *Ludwig v. Bd. of Trustees of Ferris State Univ.,* 123 F.3d 404, 409 (6th Cir.1997) (quoting *Roth,* 408 U.S. at 578, 92 S.Ct. 2701). Thus, Plaintiffs must point to some statutory or contractual right conferred by the state which supports a legitimate claim by Plaintiffs to be TennCare providers. Stated differently, it is Plaintiffs' burden to point to some state law that guarantees their eligibility to participate in the TennCare program as providers. *See Bailey v. Floyd Co. Bd. of Educ.,* 106 F.3d 135, 141 (6th Cir.1997).

■ Plaintiffs have not done so. Federal law specifically allows the TennCare

---

2. Defendants additionally move for the dismissal of Kenneth S. Robinson, M.D., Commissioner of the Tennessee Department of Health, asserting that he is not a proper Defendant because the TennCare program is now administered by the Department of Finance and Administration. Plaintiffs concede in their Response that Dr. Robinson is not a proper Defendant in this action, and Plaintiffs have submitted a proposed Order of Substitu-

tion stating that the Honorable Dave Goetz in his official capacity as a Commissioner of the Tennessee Department of Finance and Administration shall be substituted for Dr. Robinson as the proper party in this action. (Docket Entry No. 13 at 1–2). However, because this lawsuit will be dismissed with prejudice in its entirety on the merits, the Court need not consider the dismissal of individual parties.

program to establish reasonable criteria in determining eligible providers. 42 C.F.R. § 431.51(c)(2). These "[f]ederal regulations provide that states may interfere with the recipient's freedom of choice by '[s]etting reasonable standards relating to the qualifications of providers.'" *Nutritional Support Servs. v. Miller*, 806 F.Supp. 977, 980 (N.D.Ga.1992). "[T]he existence of provisions that retain for the state significant discretionary authority over the bestowal or continuation of a government benefit suggests that recipients of such benefits have no entitlement to them." *Plaza Health Labs., Inc. v. Perales*, 878 F.2d 577, 581 (2d Cir.1989) (citations omitted).

While courts have recognized that a professional may have a constitutional property right in his license to practice his profession, *see e.g., Med. Corp., Inc. v. City of Lima*, 296 F.3d 404 (6th Cir.2002),[3] a professional's asserted right to participate in a government-provided business opportunity, such as the TennCare reimbursement program, does not implicate similar constitutional considerations. In *Oakland Med. Group, P.C. v. Sec'y of Health and Human Servs.*, 298 F.3d 507 (6th Cir. June 21, 2002), the Sixth Circuit Court of Appeals stated that "although the economic impact of canceling Medicare eligibility is significant, 'a provider's financial need to be subsidized for the care of its Medicare patients is only incidental to the purpose and design of the [Medicare] program.'" *Id.* at 511 (quoting *Cathedral Rock of North College Hill, Inc. v. Shalala*, 223 F.3d 354, 364–65 (6th Cir.2000)). In that case, the Court found that the plaintiff medical services corporation had no due process right to a hearing before having its

right to provide laboratory services revoked under Medicare, and therefore the plaintiff stated no constitutional claim. *Id.* Following the reasoning of the *Oakland* Court in the instant analogous circumstance, Plaintiffs' loss of income from the dental carve-out is only incidental to the purpose of the TennCare program and the enrollees' orthodontic needs, and Plaintiffs had no due process right to a hearing before the dental carve-out was instituted. *See also Green v. Cashman*, 605 F.2d 945, 946 (6th Cir.1979) ("We do not find in the statute authorizing Medicare and Medicaid any legislative intention to provide financial assistance to providers of care for their own benefit.").

Other courts likewise have determined that providers have no specific property interest in receiving Medicare, Medicaid, or state insurance program reimbursements. In *Perales*, a provider of services under New York's state Medicaid program brought a section 1983 claim alleging deprivation of procedural due process. 878 F.2d at 578. In denying the plaintiff's request for a preliminary injunction, the Second Circuit found that the plaintiff had not shown a likelihood of success of the merits on its due process claim because "it may well be that a person's interest in uninterrupted continuation as a Medicaid provider is not a property interest that is protected by due process . . . ." *Id.* at 580. The Court reviewed existing federal and state Medicaid law and found that both suggested that "a provider does not have a property interest in continued participation in the program." *Id.* at 582. The Court determined that it need not definitively resolve the issue because even if the

---

3. In this case, the Sixth Circuit found that a properly licensed ambulance service had no property right to be on a list to receive 911 calls from the city but did have a protected property interest in its license. 296 F.3d at

411. Significantly, the Court found that with respect to licensing, the city code guaranteed only a right to do business, "not the right to receive particular business opportunities from the City." *Id.* at 410.

provider plaintiff had a property right in continued status as a Medicaid provider, the plaintiff in that case was afforded adequate notice and an opportunity to be heard before its status as provider was revoked. *Id.*

In *Cohen v. Bane,* 853 F.Supp. 620 (E.D.N.Y.1994), plaintiff pharmacies and physicians alleged that they were unconstitutionally deprived of their right to participate in New York's Medicaid program, from which they were excluded due to budget cuts. *Id.* at 623. In denying the plaintiffs' due process claims under Section 1983, the district court explained:

> The status of Medicaid provider is voluntarily assumed by a person with the State's permission and can be terminated by either party .... Plaintiffs have not shown that the status of Medicaid provider is a right secured by a statute or by the Constitution. Section 1983 does not create a substantive right but instead provides the means to protect those rights. Plaintiffs have also failed to demonstrate that being a Medicaid provider is a property or liberty interest. Indeed, it is well-established that there is no property interest in continued participation in the Medicaid program.

*Id.* at 628–29 (citing the First, Second, and Third Circuits).

Numerous other courts have reached the conclusion that providers have no due process claim for deprivation of continued participation in government funded insurance programs. *See, e.g., Erickson v.*

*United States,* 67 F.3d 858, 862 (9th Cir. 1995) ("plaintiffs do not possess a property interest in Medicare, Medicaid, or the federally-funded state health care programs"); *Cervoni v. Sec'y of Health, Educ. and Welfare,* 581 F.2d 1010, 1017–18 (1st Cir.1978) ("[p]rocedural due process is not invoked by every government action adversely affecting private interests ... [regarding] a governmental insurance program ... the real parties in interest are the beneficiaries; physicians are parties in interest only as assignees of the beneficiaries."); *Maynard v. Bonta,* No. CV 02–06539, 2003 U.S. Dist. LEXIS 16201 at *37 (C.D.Cal. Aug. 29, 2003) (holding that under California's "Medi–Cal" program, the California insurance program analogous to Tenncare, a provider "does not have a protected property interest in continued participation in the Medi–Cal program.").

■ The Court agrees with the courts who have so held. In this case, Plaintiffs have not shown that the status of TennCare provider is a right secured by a statute or by the Constitution. Section 1983 does not create a substantive right but instead provides the means to protect those rights. *Chapman v. Houston Welfare Rights Org.,* 441 U.S. 600, 612, 617–18, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979). Plaintiffs have also failed to demonstrate that being a TennCare provider is a property or liberty interest protected by the Constitution. As such, Plaintiffs' procedural due process claim fails, and Defendants' Motion to Dismiss shall be GRANTED as to that claim.[4]

---

4. Plaintiffs concede that they have no fundamental right in continued participation in the TennCare program. Thus, "[i]n the absence of an interest calling for heightened scrutiny, the rational basis test applies: the regulations at issue need only bear some rational relationship to legitimate government purposes." *Whittle v. United States,* 7 F.3d 1259, 1263 (6th Cir.1993). Thus, even if Plaintiffs had

shown that they enjoy a property right in continued participation in the TennCare program as providers, Plaintiffs have failed to show that the deprivation of their status as TennCare providers is not rationally related to a legitimate state interest. Defendants assert that the implementation of the new regulations are a proper exercise of state power and are rationally related to the goal of ensur-

### B. Substantive Due Process Claim

In evaluating a claim for the violation of an individual's substantive due process rights, "a plaintiff must establish two elements: (1) that he has a constitutionally protected property or liberty interest; and (2) that defendants arbitrarily and capriciously deprived him of that interest." *Crook v. Baker*, 584 F.Supp. 1531, 1562 (E.D.Mich.1984), *vacated* 813 F.2d 88 (6th Cir.1987)(for reasons not pertinent to this opinion). Here, as with their procedural due process claims, Plaintiffs contend that they have a protected property interest in continued participation in the TennCare program as providers of orthodontic services.

The Court has determined that Plaintiffs have not established that they possess such an interest. For the same reasons that Plaintiffs' procedural due process claim fails, so fails Plaintiffs' substantive due process claims. Accordingly, Defendants' Motion to Dismiss with regard to those claims shall be GRANTED.

### V. CONCLUSION

Based on the foregoing reasons, Defendants' Motion to Dismiss and/or for Summary Judgment, treated as a Motion to Dismiss, shall be GRANTED. This case will be DISMISSED WITH PREJUDICE.

An appropriate Order shall be entered.

### ORDER

Presently pending before the Court is Defendants' Motion to Dismiss and/or for Summary Judgment (Docket Entry No. 10), to which opposition has been filed. For the reasons explained in the Memorandum entered contemporaneously herewith, Defendants' Motion to Dismiss is

ing that trained specialists in orthodontic services provide services to TennCare enrollees.

hereby GRANTED. This case is DISMISSED WITH PREJUDICE.

It is so ORDERED.

It is legitimate for a state to regulate its TennCare program in this manner.