Stephen J. CASSIDY, as President of the
Uniformed Firefighters Association of
Greater New York, et al., Plaintiffs,

v.

Nicholas SCOPPETTA, Commissioner,
New York City Fire Department,
et al., Defendants.

No. 04–CV–0155 (DLI)(VVP).

United States District Court,
E.D. New York.

Feb. 4, 2005.

Steven A. Morelli, Carle Place, NY, for Plaintiffs.

Alan M. Schlesinger, New York City, for Defendants.

## OPINION AND ORDER

IRIZARRY, District Judge.

This lawsuit concerns the New York City Fire Department's ("FDNY's") seventeen-month-old practice of "detailing" firefighters to different units based on their use of service connected medical leave. Plaintiffs Stephen J. Cassidy, as President of the Uniformed Firefighters Association ("UFA"), the UFA itself, and certain members of the UFA (collectively "Plaintiffs") commenced this action against the FDNY, FDNY Commissioner Nicholas Scoppetta, FDNY Chief of Department Frank Cruthers, and FDNY Chief of Operations Salvatore Cassano, in their individual and official capacities, (collectively, "Defendants").

In their Amended Complaint, Plaintiffs allege that the FDNY's practice of detailing firefighters based on their use of service connected medical leave [1] violates the firefighters' procedural and substantive due process rights under the Fifth and Fourteenth Amendments, and their equal protection rights under the Fourteenth

---

1. "Service Connected Medical Leave" refers only to injuries sustained in the line-of-duty.

(Transcript of the Oral Argument held in this matter on December 17, 2004 "Tr." at 15.)

Amendment. (*Plaintiffs' Brief* at 4).[2] Plaintiffs further allege that these practices violate their rights under New York State Executive Law § 290, *et. seq.*, the New York Human Rights Law, and the New York City Administrative Code.[3] Defendants have moved, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Amended Complaint in its entirety. Plaintiffs have moved, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment. For the reasons discussed below, Defendants' motion is granted; Plaintiffs' motion is denied, and the Amended Complaint is dismissed.

### FACTS

On August 25, 2003, the FDNY Chief of Operations issued a memorandum which read, in pertinent part:

> The following members have a history of service connected medical leaves [sic] that indicates a detail to a less active unit would be in the members [sic] best interests. The following details are being made until further orders effective Tuesday, September 2, 2003.

(*Comp.* ¶ 31 and Exhibit A).[4] The memorandum goes on to list the names of twenty firefighters, their current assigned unit, and new detail unit. *Id.* The Amended Complaint lists a total of 22 firefighters, all of whom have been detailed to less active units based on their use of medical leave.[5] Pursuant to this policy, some of the firefighters have been detailed to new firehouses, while others have been changed from ladder to engine companies. At least some of the detailed firefighters have already been transferred back to their original units.

In response to this practice of detailing firefighters based on their service connected medical leave, the UFA has taken several steps. First, the UFA filed a grievance which presently is being arbitrated. The grievance alleges that the detailing is disciplinary in nature and violates FDNY regulations. Second, the UFA commenced an Article 78 proceeding challenging the medical leave detailing in New York State Supreme Court, Kings County.[6] In that proceeding, the UFA moved for a temporary restraining order and a preliminary injunction; both were denied. The UFA then withdrew its Article 78 petition in November 2003 and filed the instant case in January 2004.

### DISCUSSION

In reviewing a complaint under Fed. R.Civ.P. 12(b)(6), the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *Dangler v. New York*

---

**2.** References to *"Plaintiffs' Brief"* are to the Plaintiffs' Memorandum of Law In Opposition to Defendants' Motion to Dismiss the Complaint dated August 17, 2004.

**3.** Plaintiff's fourth cause of action, which alleged a violation of the Labor Management Relations Act and a Collective Bargaining Agreement entered into between Plaintiffs and Defendants, was withdrawn on consent at oral argument. (*See Transcript of Oral Argument of December 17, 2004 "Tr."* at 42, 45–46).

**4.** References to *"Comp."* are to the Plaintiffs' First Amended Complaint dated July 1, 2004.

**5.** The Amended Complaint also names as plaintiffs "John Doe, Jane Roe ... and others similarly situated...." To the extent the FDNY has detailed additional firefighters based on the practices described in the Amended Complaint, the Court assumes that this lawsuit is brought on their behalf as well.

**6.** Article 78 proceedings are a New York state court mechanism for challenging administrative decisions. *Moccio v. New York State Office of Court Admin.*, 95 F.3d 195, 199 (2d Cir.1996).

*City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir.1999). The motion to dismiss must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### § 1983 and Fifth Amendment Claims

Plaintiffs allege that Defendants violated their procedural due process, substantive due process, and equal protection rights under the Fifth and Fourteenth Amendments to the United States Constitution. It is unclear from the Amended Complaint and Plaintiffs' other submissions whether all of these claims are brought via 42 U.S.C. § 1983 or directly under the Constitution. Since such claims cannot be brought directly under the Constitution (*see e.g., Pauk v. Bd. of Trustees of City Univ. of New York*, 654 F.2d 856, 865 (2d Cir.1981)), the Court will treat all of Plaintiffs' Constitutional claims as if they had been alleged properly pursuant to § 1983.

Insofar as Plaintiffs allege a violation of their Fifth Amendment due process rights, that claim is dismissed. Plaintiffs have not named the United States government or any agency or employee thereof as a defendant in this matter. The Fifth Amendment "governs the conduct of the *federal* government and *federal* employees, and does not regulate the activities of state officials or state actors." *Dawkins v. City of Utica*, 1997 WL 176328, *4 (N.D.N.Y. April 4, 1997) (emphasis in original) (internal citations and quotation marks omitted). The Court will therefore treat all of Plaintiffs' due process claims as if they had been alleged only under the Fourteenth Amendment via § 1983.

### Procedural Due Process

The Fourteenth Amendment's requirement of procedural due process compels a two-part inquiry. First, the Court must determine whether the Plaintiffs adequately have alleged the deprivation of a constitutionally cognizable property or liberty interest. *Mathews v. Eldridge*, 424 U.S. 319, 332–33, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). If this requirement is satisfied, the Court then turns to the question of whether the process accorded the Plaintiffs was sufficient. *Id.*

■ "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Such property entitlements ordinarily derive from state law. *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1351 (2d Cir.1994) (citing *Roth*, 408 U.S. at 577, 92 S.Ct. 2701). Plaintiffs have taken a scattershot approach to defining the property interests of which they were allegedly deprived. The clearest elucidation of this property interest is that Plaintiffs "have a property right in their continued employment." (*Plaintiffs' Brief* at 5) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 533, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)). Assuming this is correct, Plaintiffs fail to allege how the medical details deprive them of their property right to continued employment. It is undisputed that the challenged policy amounts to nothing more than a transfer of firefighters to (apparently) less desirable units. *See Kane v. Krebser*, 44 F. Supp 2d 542, 549 (S.D.N.Y.1999) ("[D]enials of 'a particular work assignment' concerns 'interests that are not entitled to the protections afforded by the Due Process Clause'") (quoting *Ezekwo v. New York City Health & Hospitals Corp.*, 940 F.2d 775, 783 (2d Cir.1991)). Plaintiffs do not allege that they have been terminated as a result of this new policy or that their pay,

rank, seniority or benefits have been affected adversely in any way.

The Amended Complaint alleges in a conclusory fashion that "plaintiffs have suffered a loss of monetary benefits associated with their employment...." (*Comp.* ¶¶ 879, 885, 889, 902, 908.) The only support offered for this contention is that the details to less active firehouses will decrease the likelihood that Plaintiffs will be able to earn overtime. *Tr.* at 43.[7] Plaintiffs acknowledge that there is no constitutional right to overtime. *Id.*

■ Every court in this circuit that has considered the issue of whether there exists a constitutionally protected property interest in overtime pay has answered in the negative, and with good reason. *Lynch v. McNamara*, 342 F.Supp.2d 59, 66 (D.Conn.2004); *Barton v. City of Bristol*, 294 F.Supp.2d 184, 197 (D.Conn.2003); *Caniello v. City of New York*, 2001 WL 11061, *1 (S.D.N.Y. Jan. 4, 2001); *Boyd v. Schembri*, 1997 WL 466539, *3 (S.D.N.Y. Aug. 13, 1997). In *Caniello*, the plaintiff, an emergency medical specialist ("EMS"), alleged that the FDNY's placing him on desk duty pending the resolution of criminal charges against him deprived him of his constitutional right to overtime. *Caniello*, 2001 WL 11061 at *1. The Court dismissed the complaint, reasoning that the FDNY's overtime rules do not require the FDNY to provide overtime work upon demand. *Id.* As a result, the opportunity to work overtime shifts was "at best an expectation rather than an entitlement." *Id.* Given the common identity of the defendant in the present matter and the fact that Plaintiffs have similarly failed to artic-

ulate a basis for their belief in a constitutionally protected interest in overtime, this Court sees no reason to reach a different result.

■ Perhaps realizing the inadequacy of their arguments thus far, Plaintiffs go on to state that "[t]hey also had a viable deprivation of their property and liberty thereto, e.g., the omission of notice or opportunity to be heard regarding these punitive transfers." (*Plaintiffs' Brief* at 6). Plaintiffs appear to allege that the property or liberty interest of which they were deprived *was* their notice and opportunity for a hearing prior to being detailed to another unit. Plaintiffs' circular logic cannot hold. As *Loudermill* makes clear, notice and an opportunity to be heard are the *vehicles* which must be used to protect pre-existing rights: they are not rights in and of themselves. *Loudermill*, 470 U.S. at 541, 105 S.Ct. 1487 ("The categories of substance and procedure are distinct. Were the rule otherwise, the [Due Process] Clause would be reduced to a mere tautology. 'Property' cannot be defined by the procedures provided for its deprivation any more than can life or liberty."). The 'right' of notice and an opportunity to be heard are triggered only upon the deprivation of some other, pre-existing liberty or property interest. Because Plaintiffs have alleged no such deprivation, their Fourteenth Amendment right to notice and an opportunity to be heard did not attach.

Plaintiffs' final attempt to re-state their property interests fares no better. Plaintiffs claim they were reassigned as a "punitive measure ... without further inquiry or procedure to analyze whether any sort

---

**7.** Plaintiffs also argued that they may have to travel greater distances to their new posts, which would cost them additional funds in gas and tolls. *Tr.* at 43 It is enough to say that reduced gas and toll expenditures are not "monetary benefits associated with ... em-

ployment" sufficient to warrant the protection of the Fourteenth Amendment. Plaintiffs themselves were cautious in pressing this argument, acknowledging that "overtime is the prime concern." *Id.*

of misuse or abuse of leave had taken place" (*Plaintiffs' Brief* at 6). Even if Defendants did intend to transfer plaintiffs in an effort to punish them, plaintiffs fail to explain how Defendants' subjective motivations are relevant to the determination of whether Plaintiffs have been deprived of a property right. *Cf. Siegert v. Gilley*, 500 U.S. 226, 234, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991) ("Our decision in *Paul v. Davis* did not turn, however, on the state of mind of the defendant, but on the lack of any constitutional protection for the interest in reputation.") The fact that Defendants' actions may have been intended to punish the Plaintiffs, instead of to protect them as Defendants claim, does not alter the fact that none of those actions amounted to a deprivation of Plaintiffs' property rights.[8]

■ Finally, Plaintiffs allege that the "changes in detail are punitive and carry a stigma with them, injuring the[ir] reputation, honor and emotional well-being...." (*Plaintiffs' Brief* at 6).[9] Applying the Supreme Court's holdings in *Constantineau*, *Roth*, and *Paul v. Davis*, the Second Circuit has explained that the "stigma plus" test governs when harm to reputation amounts to a deprivation of Constitutional rights. *Valmonte v. Bane*, 18 F.3d 992,

999 (2d Cir.1994) (citing *Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515; *Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548; and *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)). Under the "stigma plus" test, damage to one's reputation is not "by itself sufficient to invoke the procedural protection of the Due Process Clause." *Paul*, 424 U.S. at 701, 96 S.Ct. 1155. Rather, "loss of reputation must be coupled with some other tangible element in order to rise to the level of a protectible liberty interest." *Valmonte*, 18 F.3d at 999 (citing *Paul*, 424 U.S. at 701, 96 S.Ct. 1155).

■ Plaintiffs have alleged only that the "changes in detail ... carry a stigma with them." As this test makes quite clear with its utterly appropriate name, the "stigma plus" test requires more than just stigma. A plaintiff seeking to prevail under the 'stigma plus' test must show a "significant alter[ation]" of status in addition to the alleged stigma. *Paul*, 424 U.S. at 710–11, 96 S.Ct. 1155. Here, Plaintiffs have alleged nothing in addition to their injury to "reputation, honor and emotional well-being"—all synonymous either with stigma or the consequences flowing naturally

---

**8.** In the Plaintiffs Memorandum of Law In Support of Motion for Partial Summary Judgment, Plaintiffs claim, for the first time, that they are covered by the New York Civil Service Law which creates an enforceable expectation of continued public employment constituting a property interest within the meaning of the Fourteenth Amendment. Even if Plaintiffs had properly alleged this property interest in their Amended Complaint, which they did not, their claim would still fail. First, New York courts have determined that a transfer is not a disciplinary action within the meaning of the Civil Service Law, even where the transfer is prompted by disciplinary considerations. *Pelt v. New York City Housing Authority*, 199 A.D.2d 26, 605 N.Y.S.2d 11, 12 (1st Dep't 1993). Second, Plaintiffs still have failed to allege how the medical details deprive them of their property rights to "contin-

ued employment," since they have alleged only that they have been transferred without any loss or reduction in pay, rank or other benefits.

**9.** The Court is extremely doubtful that Plaintiffs will be able to show that the medical details are tantamount to the "state attach[ing] a 'badge of infamy'" to the firefighters. *Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971). Nevertheless, Plaintiffs have alleged stigma in their Amended Complaint, and the Court must therefore address whether Plaintiffs have adequately pled the type of reputational harm that amounts to a deprivation of liberty entitled to the Fourteenth Amendment's procedural protection.

therefrom—that would satisfy the "plus" requirement, and the Court can find none. *See Valmonte*, 18 F.3d at 1001 (noting that "the impact that defamation might have on job prospects, or, for that matter, romantic aspirations, friendships, self-esteem, or any other typical consequence of a bad reputation" are not sufficient to meet the "plus" prong of the test.)

The fact that Plaintiff firefighters were detailed to other units does not satisfy the "plus" prong. In *Martinez v. City of New York*, Judge Pauley rejected the argument of the plaintiff, a New York City Police Officer, that a transfer to another precinct satisfied the "plus" requirement of the test. 2003 WL 2006619, *8 (S.D.N.Y. April 30, 2003); *accord Maples v. Martin*, 858 F.2d 1546, 1551 n. 5 (11th Cir.1988) (holding that the transfer of university professors between departments without loss of rank or pay did not implicate professors' liberty interest). Moreover, the Second Circuit has held that an individual who was terminated for two-weeks and then rehired into the same position could not, as a matter of law, show a significant alteration of his employment status sufficient to meet the "plus" requirement. *Patterson v. City of Utica*, 370 F.3d 322, 332 (2d Cir.2004); *see also Dobosz v. Walsh*, 892 F.2d 1135, 1140 (2d Cir.1989) (holding five-month suspension of police officer not a sufficient plus factor to give rise to a protected liberty interest when he was later reinstated with back pay). If a two-week termination and five-month suspension do not constitute a sufficient plus factor to meet the stigma plus test, surely a transfer

without any diminution in pay, benefits or rank cannot.[10]

For this Court to hold as Plaintiffs urge would strip the FDNY of the ability to effectively manage and deploy firefighters as it deems necessary. Plaintiffs acknowledged at oral argument that the FDNY has the "right to transfer [a firefighter] anytime they want." *Tr.* at 14. Plaintiffs then proceeded to argue that a transfer for any reason other than promotion or by request is viewed as a disciplinary measure. *Tr.* at 33. A transfer for such reason, the argument goes, necessarily comes with the type of "stigma" for which the Due Process Clause requires a pre-deprivation hearing. The only logical conclusion to which Plaintiffs' argument leads is that the FDNY may not transfer a firefighter for any reason other than promotion or upon request without a pre-transfer hearing. The Constitution does not impose such a requirement.

Ultimately, Plaintiffs' claims boil down to an allegation that they had a constitutionally protected property or liberty interest in remaining at their present posts and avoiding any unwelcome detail. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577, 92 S.Ct. 2701. Nowhere in their 147–page Amended Complaint (exclusive of exhibits) have Plaintiffs pointed to any "existing rule[ ] or understanding[ ] stem[ming] from an independent source

---

**10.** The Court also notes that allowing the medical details to satisfy the "plus" requirement would seem to contradict the very name of the test. "Stigma plus" strongly implies that the allegedly stigmatizing government conduct itself may not be used to satisfy the "plus" requirement. In other words, the "stigma" and the "plus" must be two distinct things. Plaintiffs argue that the details themselves are stigmatizing, and then argue that those details also constitute the "plus." To accept this argument would merge the "stigma" and "plus" requirements into one, contravening logic and depriving the test of its true meaning.

such as state law .... " which would confer such a right. *Id.* The Court therefore finds that the Plaintiffs have failed to adequately allege the deprivation of a liberty or property interest sufficient to invoke the Due Process Clause of the Fourteenth Amendment. Accordingly, Plaintiffs' procedural due process claims are dismissed.[11]

### Substantive Due Process

"Substantive due process protects individuals against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is 'incorrect or ill-advised.'" *Lowrance v. Achtyl,* 20 F.3d 529, 537 (2d Cir.1994) (internal citations omitted). "The first step in the substantive due process analysis is to identify the constitutional right at stake." *Kaluczky v. City of White Plains,* 57 F.3d 202, 211 (2d Cir.1995). For the same reasons discussed in the analysis of Plaintiffs' procedural due process claims, above, Plaintiffs fail to allege the deprivation of a constitutional right sufficient to invoke Fourteenth Amendment substantive due process protection.[12] *Zahra v. Town of Southold,* 48 F.3d 674, 680 (2d Cir.1995) ("To state a substantive due process claim, a party must *first* establish that he had a valid property interest in a benefit that was entitled to constitutional protection at the time he was deprived of that benefit.")

(internal citations omitted) (emphasis in original).

### Equal Protection

Plaintiffs also challenge the medical details under the Fourteenth Amendment's Equal Protection Clause. Specifically, Plaintiff firefighters allege that they are being treated differently from all other firefighters based on their use of service-connected medical leave. *Tr.* at 34–35 While this is no doubt true, this type of disparate treatment does not violate the Equal Protection Clause.

■ The Equal Protection Clause of the Fourteenth Amendment is "essentially a direction that all persons similarly situated be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). At the outset, the Court notes that Plaintiffs have failed to allege that they are being treated differently than others who are similarly situated. "The test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent.... In other words, apples should be compared to apples." *Penlyn Development Corp. v. Incorporated Village of Lloyd Harbor,* 51 F.Supp.2d 255, 264 (E.D.N.Y.1999) (citing *Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 19 (1st Cir.1989) (applying the standard in the context of a § 1981 claim)). With respect to the medical details, a firefighter who

---

11. Because the Court concludes that Plaintiffs were not deprived of any constitutionally protected liberty or property interests, the Court does not reach Defendants' alternative contention that, notwithstanding any deprivation, Plaintiffs were accorded all the process due. In addition, because all of Plaintiffs' claims are dismissed either for failure to state a claim upon which relief may be granted or for lack of subject matter jurisdiction (*see infra* ), the Court also declines to address Defendants' contention that Plaintiffs' claims are barred by *res judicata.*

12. Plaintiffs make no effort to distinguish the liberty or property interest alleged to have been infringed upon in their procedural due process claim from the interests alleged to have been violated in their substantive due process claim. In discussing the "Arbitrariness Standard" of the substantive due process analysis, Plaintiffs state merely, "[a]s discussed *supra* [referring to their procedural due process argument], Plaintiffs have alleged that they have a protected property interest in their public employment...." *Plaintiffs' Brief* at 11.

has used an extensive amount of medical leave is not similarly situated to a firefighter who has not used an extensive amount of medical leave. Thus, to the extent the Plaintiff firefighters seek to compare themselves to firefighters who have used significantly less medical leave, they have failed to allege the most fundamental aspect of an equal protection claim.[13]

■ Even if the Court were to lump plaintiffs into one category—that of 'firefighters'—Plaintiffs' equal protection claim would still fail. Equal protection analysis requires the application of strict scrutiny only when the challenged "classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class." *Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 313, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976) (collecting cases). Because Plaintiffs have neither identified a fundamental right nor asserted that they are members of a suspect class, the proper mode of review is the rational-basis test. *Cleburne,* 473 U.S. at 440, 105 S.Ct. 3249. Under this test, the governmental classifi-

cation will be upheld "if there is a rational relationship between the disparity of the treatment and some legitimate governmental purpose." *Heller v. Doe,* 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993) (citing cases).

■ The challenged policy provides for the transfer to less active units of firefighters who have, in the opinion of the FDNY, used an excessive amount of service connected medical leave. The stated goal of this policy is best articulated in Exhibit C to the Amended Complaint, a letter from the FDNY's Director of Labor Relations to Plaintiff Cassidy in response to his objection to the medical details. The letter states, in relevant part, "A lower level of activity, change in branch of service, or change in supervision may be effective in reducing exposure, and consequently, Medical Leave." Exhibit A to Plaintiffs Amended Complaint, which is the initial memorandum from the FDNY Chief of Operations ordering the details, states that "a detail to a less active unit would be in the members best interests." Thus, it appears that the FDNY, in pursuing these

---

**13.** Referring to the 25 individual firefighters who have been detailed to other units, Plaintiffs wondered aloud at oral argument "why those 25 individuals? What is it about them that they decided ... to transfer them?" *Tr.* at 16. Insofar as Plaintiffs imply a selective prosecution-type of equal protection challenge, they have failed to adequately so plead. "Mere failure to prosecute other offenders is not a basis for a finding of denial of equal protection." *LeClair v. Saunders,* 627 F.2d 606, 608 (2d Cir.1980). Instead, "selective prosecution implies that a selection has taken place." *U.S. v. Armstrong,* 517 U.S. 456, 469, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996) (internal quotations omitted). Moreover, although Plaintiffs cite *FSK Drug Corp. v. Perales,* 960 F.2d 6 (2d Cir.1992) and similar cases in their Memorandum of Law In Support of Motion for Partial Summary Judgment, they have never argued that the FDNY singled out Plaintiff firefighters with a "mali-

cious or bad faith intent to injure" them. Plaintiffs apparent concession, discussed below, that "the FDNY is acting to better serve its financial interests ..." (*Comp.* ¶ 44) suggests that Defendants are acting to further their budgetary goals, and not with "a malicious or bad faith intent to injure" as that term has been used in this Circuit. *See e.g., Zahra v. Town of Southold,* 48 F.3d 674, 684 (2d Cir.1995) ("[E]vidence suggesting that [plaintiff] was 'treated differently' from others does not, in itself, show malice.") Even if Plaintiffs had attempted to proceed under this very narrow band of equal protection cases, the conclusory allegations made in the Amended Complaint are wholly insufficient to put Defendants on notice of such a claim. *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (Defendant is entitled to "fair notice" of what the plaintiff's claim is and the grounds upon which it rests.)

medical details, is seeking either to: (1) reduce the amount of medical leave used by certain firefighters; or (2) protect the firefighters from possible future injury, or both.

Plaintiffs imply, in a conclusory fashion, that Defendants' motives are far more sinister. In paragraph 44 of the Amended Complaint, Plaintiffs allege that "the FDNY is acting to better serve its financial interests...." Defendants do not dispute that the reduction in medical leave sought by the policy may have a positive budgetary impact on the FDNY. It is worth noting that Defendants are not required to articulate any reason for the challenged policy under rational-basis review. *Heller*, 509 U.S. at 320, 113 S.Ct. 2637 (citing cases). However, since Defendants have articulated a reason or reasons for their policy, the Court will use the FDNY's stated objective(s) for purposes of equal protection analysis, rather than speculate as to what other legitimate governmental purposes the medical details might effectuate.

The Court finds that the goals of the medical leave detailing policy are legitimate objectives. Defendants undoubtedly have a legitimate interest in reducing the number of firefighters on medical leave, reducing injuries among firefighters, and/or reducing the cost to the FDNY of those injuries. *See e.g., Castellano v. Bd. of Trustees of Police Officers' Variable Supplements Fund*, 937 F.2d 752 (2d Cir. 1991) (upholding city's payment of supplemental retirement benefits to police officers who retired after 20 years of service, as opposed to those who retired based on disability, as rationally related to the legitimate governmental interests of encouraging continued service of experienced police officers and discouraging the seeking of disability status); *Rumsey v. New York State Dept. of Correctional Services*, 19 F.3d 83, 93 (2d Cir.1994) (directive requiring corrections officers to use their days off to fulfill their obligations as military reservists was rationally related to the legitimate governmental interest of ensuring that corrections facilities were adequately staffed); *New York City Managerial Employees Ass'n v. Dinkins*, 807 F.Supp. 958, 970–71 (S.D.N.Y.1992) (citing budgetary considerations as a legitimate state interest under the Equal Protection Clause). The first prong of the rational-basis inquiry is therefore satisfied.

■ The only remaining issue is whether the medical details bear a rational relationship to any of the legitimate purposes referenced above. Plaintiffs apparently concede this by alleging that "the FDNY is acting to better serve its financial interests...." (*Comp.* ¶ 44). It is also rational to conclude that a less active firehouse will lower the risk of injury or re-injury, thereby reducing the amount of medical leave used by the firefighters. It stands to reason and comports with common-sense that more frequent exposures to the dangers of firefighting are likely to result in more injuries and that the contrapositive is also true. Plaintiffs themselves do not disagree with this conclusion. They state only that there is "no guarantee" that less active firehouses will result in fewer injuries because of the dangers inherent in firefighting (*Comp.* ¶ 43) and that the FDNY has offered "no evidence" in support of this contention (*Tr.* at 13). Plaintiffs seek to impose upon Defendants an obligation that does not exist. It is well-settled that

[a] State ... has no obligation to produce evidence to sustain the rationality of a statutory classification 'A legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data.' (citations omitted) A

statute is presumed constitutional ... and 'the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it,' (citations omitted) whether or not the basis has a foundation in the record.

*Heller,* 509 U.S. at 320–21, 113 S.Ct. 2637 (internal citations omitted). As Defendants accurately state, "[t]he equal protection clause requires rationality, not guarantees." *Defendants' Brief* at 19.[14]

Plaintiffs claim support for their contentions in *Uryevick v. Rozzi,* 751 F.Supp. 1064 (E.D.N.Y.1990) and *Voorhees v. Shull,* 686 F.Supp. 389 (E.D.N.Y.1987). A closer look at those cases reveals their inapplicability to the facts here and underscores the fatal flaw in Plaintiffs' claim. Both *Uryevick* and *Voorhees* involved regulations that required police officers on sick leave to remain inside their homes from at least 9:00 a.m. to 5:00 p.m. unless granted permission to leave.[15] Judge Jacob Mishler, who decided both cases, noted that the regulations necessarily infringed on fundamental rights, such as the right to practice one's religion (by, for example, going to church), the right to vote, the right to associate with family and friends, the right to attend political meetings, the right to consult with an attorney and the right to travel, among others. *Uryevick* 751 F.Supp. at 1067; *Voorhees,* 686 F.Supp. at 392. A governmental regulation which infringes on the free exercise of such rights is subject to strict scrutiny. *Uryevick,* 751 F.Supp. at 1068; *Voorhees,* 686 F.Supp. at 393. However, because the defendant was the government acting in its capacity as an employer, as opposed to "regulating the citizenry in general,"

Judge Mishler, in accordance with the Supreme Court's reasoning in *Pickering v. Bd. of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) and *Kelley v. Johnson,* 425 U.S. 238, 245, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976), employed a "more deferential" standard of review. *Uryevick,* 751 F.Supp. at 1068; *Voorhees,* 686 F.Supp. at 393. The Court therefore applied a modified version of the rational-basis test, which required that the challenged regulations be "rationally connected in a non-arbitrary fashion" to a legitimate governmental interest. *Uryevick,* 751 F.Supp. at 1068 (citing *Hambsch v. Dep't of Treasury,* 796 F.2d 430, 434 (Fed.Cir. 1986)); *Voorhees,* 686 F.Supp. at 394 (citing *Kelley,* 425 U.S. at 247–48, 96 S.Ct. 1440). Judge Mishler concluded that the lack of guidelines in determining when police officers on sick leave can leave their homes and for what reasons created an unacceptable risk that police officers would be denied arbitrarily the ability to exercise their fundamental rights. *Uryevick,* 751 F.Supp. at 1071; *Voorhees,* 686 F.Supp. at 394–95.

Plaintiffs' blanket assertion that this modified version of the rational-basis test applies in this case ignores the careful analysis by which *Uryevick* and *Voorhees* and their progenitors, *Pickering* and *Kelley,* arrived at that standard. The *first* step was concluding that the challenged regulations "curtailed" the free exercise of "rights specifically protected by the Bill of Rights ....."; a finding which would ordinarily trigger strict scrutiny. *Uryevick,* 751 F.Supp. at 1068; *Voorhees,* 686 F.Supp. at 393. However, when the government acts in its capacity as employer, as opposed to "regulating the citizenry in

**14.** References to *"Defendants' Brief"* are to the Defendants' Memorandum of Law In Support of Their Motion to Dismiss the Complaint.

**15.** The regulation at issue in *Uryevick* also required police officers designated as "sick leave abusers" to remain in their homes for 24 hours per day while on sick leave.

general," the same constitutional protections are not necessary and the government is afforded more latitude in promulgating the regulations. *Kelley,* 425 U.S. at 245, 96 S.Ct. 1440; *Uryevick,* 751 F.Supp. at 1068; *Voorhees,* 686 F.Supp. at 393. In an apparent effort to meet in the middle, the Court inserted the "non-arbitrary fashion" language into the traditional formulation of the rational-basis test. *Uryevick,* 751 F.Supp. at 1068; *Voorhees,* 686 F.Supp. at 393. This is precisely the language that proved fatal to the regulations at issue in *Uryevick* and *Voorhees* because, due to the lack of clear guidelines regarding who could leave their home under the challenged sick leave regulations, the potential for an "arbitrary" denial of the exercise of certain fundamental rights was too great to pass constitutional muster. As explained above, this differs from the instant case because the challenged regulation does not infringe on any fundamental rights and, therefore, does not meet the necessary prerequisite to the application of the modified rational-basis test set forth in *Uryevick* and *Voorhees.*

Plaintiffs also allege that

[w]hile the policy proclaims that a transfer or reassignment may transpire 'for the safety and welfare of the public,' upon information and belief the detailing of firefighters works against this objective for the following reasons: (1) it is creating a situation whereby the firefighters are unfamiliar with the community, their supervisors, their colleagues, as well as the buildings, streets and traffic flow in that neighborhood; (2) it diminishes the firefighters [sic] morale; (3)[it] puts their lives and the lives of those within their community at [sic] danger; (4) it deteriorates the trust that firefighters have with the people in their neighborhood; and (5) it breaks the ties of unity and family bonds formed in the firehouse, whereby each firefighter

knows each others [sic] physical and psychological limitations and are able to adequately compensate for any shortcomings.

*Comp.* ¶ 47. While these allegations may suggest that the FDNY's policy is a bad idea, none support the conclusion that Defendants have violated Plaintiffs' fundamental rights.

The Court will not discuss in detail the numerous past instances where employees of the state have challenged personnel decisions under the Due Process and Equal Protection Clauses. *See e.g., Kelley,* 425 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 708 (upholding the validity of county's hair grooming regulation for male members of its police force); *Zalewska v. County of Sullivan, New York,* 316 F.3d 314 (2d Cir. 2003) (holding that county regulation prohibiting employees from wearing skirts to work did not violate Equal Protection Clause); *Pappas v. Giuliani,* 290 F.3d 143 (2d Cir.2002) (upholding the firing of a New York City policy officer for anonymously disseminating anti-black and anti-Semitic materials). Suffice to say it is a challenge not well received. *See e.g., Brown v. Brienen,* 722 F.2d 360, 365 (7th Cir.1983) ("[D]isputes over overtime, over work assignments, over lunch and coffee breaks do not implicate the great objects of the Fourteenth Amendment.") As in many of the cases cited above, Plaintiffs' objections here amount to no more than an allegation that the FDNY's policy of transferring firefighters who have used an excessive amount of medical leave is a bad idea. Even if true, the wisdom of this policy is not a proper subject for judicial review. *Bishop v. Wood,* 426 U.S. 341, 349–50, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976) ("The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies.... The Due Pro-

cess clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions."). Accordingly, Plaintiffs have failed to state a claim under the Equal Protection Clause of the Fourteenth Amendment.

*Qualified Immunity*

The Amended Complaint names as Defendants FDNY Commissioner Nicholas Scoppetta, FDNY Chief of Department Frank Cruthers and FDNY Chief of Operations Salvatore Cassano (the "FDNY Officials") in their "individual and official capacit[ies]." *Comp.* at 1. Plaintiffs did not press these "individual capacity" claims in their motion for summary judgment or at oral argument. Insofar as Plaintiffs have not abandoned their claims against the FDNY Officials in their individual capacities, those claims are dismissed. "In a § 1983 action, it is well-settled that qualified immunity shields a defendant from personal liability for damages so long as his conduct did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Kaluczky,* 57 F.3d at 207 (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Because none of Plaintiff's statutory or constitutional rights were violated, and, *a fortiori,* no "clearly established" rights were violated, the Defendants are entitled to qualified immunity from individual liability in this matter.

*State Law Claims*

Plaintiffs' claims under New York State Executive Law § 290, *et. seq.,* the New York Human Rights Law, and the New York City Administrative Code are dismissed for lack of subject matter jurisdiction. "[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Principles of comity support this conclusion, as personnel decisions of a municipal employer should not be second-guessed by a federal court.

## *CONCLUSION*

Firefighters are called upon daily to risk their lives for the safety of others. The transfer of these individuals, from familiar to unfamiliar surroundings, cannot be an easy adjustment—particularly in such a dangerous job. Nonetheless, a federal court may not involve itself in what amounts to a labor dispute simply because Plaintiffs have managed to insert the words "Fourteenth Amendment" into their Complaint, or even because "Plaintiffs are amongst 'New York's Bravest.'" *Comp.* at 2. For the reasons stated above, the Amended Complaint is hereby dismissed.